## L. L. BROWN PAPER CO. v. HYDROILOID, Inc., et al.

### No. 203.

Circuit Court of Appeals, Second Circuit.

March 24, 1941.

Emery, Varney, Whittemore & Dix, of New York City, for appellee L. L. Brown Paper Co.

Cravath, De Gersdorff, Swaine & Wood, of New York City, for appellees Ronald C. Lee and Joseph D. Lee.

Katz & Sommerich, of New York City (Henry I. Fillman, of New York City, of counsel), for respondents-appellants.

Before SWAN, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff, a Massachusetts corporation, manufactures and sells paper which is resistant to the effect of water, grease and the like, as a licensee under United States Patent No. 1,682,390, granted on the application of Alfred Lutz, for what will herein be called the Hydroiloid Process to make .paper so resistant. Controversy having arisen as to its rights as such licensee and as to the rights of the other parties to this action under the license agreement and under the patent, it brought this suit under the provisions of the Declaratory Judgment Act (Title 28 U.S.C.A. § 400) for their determination. From a decree for the plaintiff, part of the defendants have appealed.

The principal issues involved are whether the assignee of a patent who took title when a license under the patent had been granted and did not acquire the rights of the licensor as such may cancel the license for alleged breaches of the agreement by the licensee; and, if so, whether the plaintiff, the licensee, has broken the license agreement.

The facts are somewhat complicated. In June 1921, a German corporation called Exportingenieure fuer Papier und Zellstofftechnik G. m. b. H., to which the parties refer as the Parent Company, and in which appellant Scherbak was the principal stockholder, owned some foreign patents covering a process for treating paper and like products to make them water and grease resistant. It also owned an application, No. 456,759, made by the inventor for a United States patent for the same process already mentioned herein as the Hydroiloid Process. Licenses had been granted under the foreign patents and the trademark "Hydroiloid" had been applied to products so made and had become well-known.

On June 11, 1921 the Parent Company assigned all its rights to the process for use in the United States, and to the above mentioned application for a United States patent, to four men in New York among whom were defendants R. C. Lee and J. D. Lee who are not appellants here. Those assignees assigned all their interests so acquired to a New York corporation Hydroiloid, Inc., which will hereafter be called Hydroiloid.

Before any American patent was granted on the Lutz application, Hydroiloid entered into a contract with the appellee authorizing it to exploit the process in this country as a secret one. At first appellee's license covered the treatment and sale in the United States of writing paper of a quality designated by price but on April 29, 1926 it was modified to include all rag content writing paper. The agreement provided that the license granted should extend to the then pending patent application of Lutz; to any future patent applications by Lutz or Hydroiloid; to all United States Patents which should be issued on such applications; and to the trade-mark "Hydroiloid". The patent involved herein was granted on the Lutz application, above mentioned, on August 28, 1928, to defendant R. C. Lee pursuant to mesne assignments which conveyed the title to the application to him.

Under this license agreement the appellee was bound to pay Hydroiloid 'stated royalties; to give it access to the Brown mill to enable it to help in carrying out the process; to disclose the process only to such persons as would agree to keep it confidential and to whom disclosure was necessary; to take reasonable precautions to prevent disclosure by others; to keep proper records; and to sell all paper processed under trade names which would include either "Hydroil" or "Hydroiloid". Hydroiloid agreed to permit appellee to use its New York laboratory to copy any part of its machinery or process; to give advice on any relevant matter; to give instructions at appellee's mill or in writing; and to supervise the erection of Hydroiloid machinery at appellee's mill.

The capital stock of Hydroiloid was owned in part by the American interests which may conveniently be referred to now as Lee and by the foreign interests which may be called simply Scherbak. The disputes arising between these interests have

led to this suit by the plaintiff which has been adversely affected by such controversies though it has had no trouble with Lee.

The difficulty began in 1926 and grew out of the fact that Lee and Scherbak withdrew from Hydroiloid the royalties it received from appellee, and from two other licensees, to such an extent that it became financially embarrassed. Both Lee and Scherbak wanted the other to finance Hydroiloid but neither would do so and at a meeting of Hydroiloid's directors on Nov. 30, 1927, the dispute culminated in Scherbak's leaving the meeting and within a few days naming one Caldwell, in place of J. D. Lee who had before so acted, to collect and remit royalties to him and in his sailing for Europe on December 4, 1927.

Hydroiloid continued to be in difficulty from lack of funds and in March 1928 made a general assignment for the benefit of creditors. A sale was made of all its assets to R. C. Lee which was duly confirmed by the court and in this way Lee acquired what was covered by the original assignment of 1921 made by the Parent Company; the patent application of Lutz on which the patent was later granted to him; and the license contract with appellee.

On April 2, 1928, Scherbak granted a license for the United States which Lee claimed he had no right to grant and their disputes continued. Appellee, caught in a dilemma, paid the royalty next falling due to both Lee and Scherbak and sued Lee to recover the payment to him, inviting Scherbak to join in the suit but he refused. The suit was discontinued when Lee gave appellee an indemnity bond and thereafter appellee paid royalties only to Lee. Later Lee and Scherbak settled their disputes and, after making contracts to that end, exchanged general releases on November 5, 1930.

Under this settlement Scherbak obtained an assignment of the American patent hereinbefore mentioned and that was then assigned to the appellant Verwaltungs und Reorganisations A. G. Schwyz, a Swiss corporation controlled by Scherbak. The settlement agreement provided that the license agreement between Hydroiloid and appellee, which Lee had obtained on the general assignment sale, should be owned by Ronald C. Lee and one Loeb, Scherbak's attorney, and that each should have an undivided one-half interest in said license contract and the payments accruing thereunder.

Loeb later assigned his interest in the license agreement to the appellee. Hydroiloid was dissolved in 1933.

For sometime after this settlement, matters remained quiet but in 1935 Scherbak took the ground that the dissolution of Hydroiloid had terminated the appellee's rights under its license and pressed it to take a license from Scherbak to avoid having the Parent Company terminate the general license to Hydroiloid and undermine, as Scherbak insisted could be done, Lee's title in such a way as to destroy the validity of appellee's license. Nothing came of this but in May of 1938 Scherbak charged appellee with infringement of the patent claiming he could, on behalf of Hydroiloid and the Swiss corporation, cancel its license for breaches of the agreement by appellee for failing to account; for failing to supply information as to improvements; for adopting a competitive process; for failing to use the trade-mark "Hydroiloid"; for failing to deliver testimonials it received; and for making claims that it had produced like paper before using the process in contradiction of its covenant in the license that it had not done so.

It was as a result of the circumstances stated that appellee brought this suit and obtained a decree upholding the validity of its license and establishing its compliance with its provisions.

■ There can be no doubt on this appeal but that Lee actually obtained by purchase at the general assignment sale all the assets of Hydroiloid which included Hydroiloid's interest in the license to the appellee to use the secret process and Hydroiloid's interest in the patent application of Lutz. Scherbak made the settlement with Lee on that basis and has accepted the fruits of that settlement. His title to the patent was derived from Lee to whom it was issued and he has had the benefit of the half interest in the license contract which was transferred to Loeb, his nominee, and then to the appellee. He cannot retain the benefits of that settlement and at the same time question its validity. One of the benefits was the acquisition of the patent, the ownership of which is the basis of Scherbak's claimed right to cancel the appellee's license.

■ The additional point is made that the license agreement called for such personal services by Hydroiloid that it wasn't assignable to Lee. Aside from any difficulty in applying the personal service

theory to a license granted by a corporation which does not cover the services of any particular individual, it is enough to point out that such services were for the benefit of appellee alone and as it made no objection to the assignment on that score but accepted Lee as the licensor any infirmity in that respect was waived. Moreover, if it were not assignable Scherbak would still be a stranger to it. So the rights of Lee and Scherbak depend not upon any inability to settle and transfer interests as they expressly agreed but upon the legal effect of their agreement and action taken under it.

■ Appellee's license became one under the patent as soon as it was issued to Lee. Then Lee as the patent owner, disregarding for simplicity any other licenses, had all the exclusive rights granted by the patent except as they were diminished by the appellee's license rights. What Scherbak received on the assignment of the patent by Lee could not, of course, exceed Lee's interest and so Scherbak took the usual rights of a patent owner diminished by appellee's right to use the patented process within the scope of its license. Keystone Type Foundry v. Fastpress Co., 2 Cir., 272 F. 242. That is to say, the scope of the appellee's rights under its license to practice the invention remained unaffected by the assignment of the patent itself. And, of course, its obligations to pay royalties due and to become due and to perform all its promises in the nature of the consideration it gave for its license remained as before. As to so much, Lee continued to be the obligee and as these matters were all merely conditions upon the continued enjoyment of the license and in no way affected the scope of it as a lessening of the original exclusiveness of the patent, Lee who under the settlement with Scherbak was entitled to retain one-half the fruits of the license contract, can alone call the appellee to account for any breach of its agreement in that respect.

■ Scherbak, as the present owner of the patent, has an enforceable interest only to the extent of infringement. So far as he is concerned, the license must be treated as one for which the appellee has fully paid the consideration in advance. So long as appellee does not act in excess of the scope of its license it will not infringe and Scherbak will have no redressable grievance.

■ It is now well settled, contrary to what had formerly been held in Heaton-Peninsular Button-Fastener Co. v. Eureka Specialty Co., 6 Cir., 77 F. 288, 35 L.R.A. 728; Indiana Mfg. Co. v. Shepard Co., C. C., 190 F. 579; and Henry v. A. B. Dick Co., 224 U.S. 1, 32 S.Ct. 364, 56 L.Ed. 645, Ann.Cas.1913D, 880, that the breach by a licensee of an obligation in a patent license to perform as to a subject not within the claims of the patent itself is not an infringement of the patent. Motion Picture Patents Co. v. Universal Film Co., 243 U.S. 502, 37 S.Ct. 416, 61 L.Ed. 871, L.R.A.1917 E, 1187, Ann.Cas.1918A, 959. So Scherbak, as the patent owner having no interest in the appellee's license has no right to cancel or otherwise interfere with the appellee's enjoyment of it short of infringement of the patent itself. The claim that appellee has adopted a competitive process does not amount to a charge of infringement. And so there is here no allegation to put in issue whether or not appellee has used the patented process more extensively than permitted by its license.

The plaintiff was, therefore, entitled to the relief sought and granted in this action regardless of any question of infringement and regardless of whether or not it has performed all its obligations by way of consideration to be paid the licensor.

Judgment affirmed.