Josef **KRAMPE**, Plaintiff,

v.

**IDEAL INDUSTRIES, INC.**, Defendant.

No. 71 C 47.

United States District Court,
N. D. Illinois, E. D.

Sept. 26, 1972.

Julius Tabin and Robert B. Jones, Fitch, Even, Tabin & Luedeka, Chicago, Ill., for plaintiff.

Parker, Carter & Markey, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on the motion of defendant for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The action, arising under the patent laws of the United States, involves the alleged infringement by defendant of plaintiff's patent for a swivel blade cable stripper. Jurisdiction is conferred by 28 U.S.C. § 1338(a).

Defendant's motion is founded upon its assertion that plaintiff has so misused the patent in suit as to render it unenforceable. Plaintiff denies that he has misused the patent, contending further that summary judgment is generally inappropriate in patent cases.

The uncontroverted facts include the following: Plaintiff, a citizen of West Germany, manufactures a cable stripper under the trade name of Jokari. On October 23, 1967, he filed in the United States Patent Office an application containing ten claims for examination; all ten claims were rejected by the Patent Office on April 22, 1969. Plaintiff then entered into a contract on July 28, 1969 with P. W. Weidling & Sohn KG (hereinafter referred to as "Weidling"), a German corporation, whereby he granted that company an exclusive license to sell the Jokari cable stripper. That contract, purporting to be world-wide in scope, is still in effect. Plaintiff's cable stripper was finally patented on December 16, 1969. Since that time defendant, a Delaware corporation with its principal place of business at Sycamore, Illinois, has been manufacturing and selling swivel blade cable strippers in the United States.

Defendant's contention that plaintiff has misused his patent monopoly arises from the terms of plaintiff's contract with Weidling. The pertinent portion of that agreement (in § II.3.) provides as follows:

"The licensed vendor undertakes to sell no products of other manufacture which are identical with or similar to

[the patented device]. He will also avoid any direct or indirect competition relative to the manufacturer. In particular, he may not act for a third party which makes or sells identical or similar products, either directly or indirectly, within or without the (licensed) territories, be it as a licensed vendor, commission vendor or representative. This also applies to the sale of used products. Exceptions require the written agreement of the manufacturer."

Defendant contends that the contractual preclusion of Weidling's dealing in competitive goods constitutes an enlargement of plaintiff's monopoly beyond the limitation inherent in the patent grant.

■ The law is well settled that a patentee may not increase the scope of the monopoly afforded by his patent through a license agreement with a manufacturer or distributor; indeed, an attempt to so enlarge the exclusive right will prevent his maintenance of an action for patent infringement. Morton Salt Co. v. G. F. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363 (1942). While the earlier decisions in this area were limited to contracts tying unpatented products to those under patent, the concept of misuse has been extended to contracts prohibiting a licensee from dealing in goods which compete directly with the patented product. See, e. g., Berlenbach v. Anderson & Thompson Ski Co., 329 F.2d 782 (9th Cir. 1964), cert. denied, 379 U.S. 830, 85 S.Ct. 60, 13 L.Ed.2d 39 (1964); National Lockwasher Co. v. George K. Garrett Co., 137 F.2d 255 (3d Cir. 1943).

Denying misuse, plaintiff maintains (1) that the Krampe-Weidling agreement does not contain an absolute contractual prohibition against Weidling's dealing in competitive goods since it provides for Weidling's obtaining plaintiff's permission to do so; (2) that he could not have used his patent to procure the exclusive right specified in the contract since at the time of the contract he had no allowable claims pending with the Patent Office and thus no patent rights; and (3) that the provision in dispute has never been enforced in the United States.

■ With respect to plaintiff's argument that the contractual prohibition against dealing in competitive goods is not absolute in nature, this Court notes that the provision for plaintiff's possible permission to so deal is unilateral, rendering Weidling helpless to bargain for such permission. Such a provision was held not to alter the character of an absolute prohibition against competition in F. C. Russell Co. v. Comfort Equipment Corp., 194 F.2d 592 (7th Cir. 1952).[1]

Moreover, the scope of this prohibition is even greater than those in the Berlenbach and National Lockwasher cases, *supra*. The specification that Weidling "also avoid any direct *or indirect* competition relative to the manufacturer" (emphasis added) indicates an additional restraint on nonpatented articles which are not in direct competition with plaintiff's tool; this constitutes an even clearer abuse of plaintiff's patent rights. Thus, this Court holds that this provision in the Krampe-Weidling agreement is of that character which can prevent relief to a patentee in his action for patent infringement.

■ Turning to the question of whether plaintiff used his patent monopoly to procure the additional exclusive right of lessening competition for his patented tool, this Court finds that plaintiff possessed inchoate rights in the cable stripper from the time he filed his patent application. See Mullins Mfg. Co. v. Booth, 125 F.2d 660, 664 (6th Cir. 1942). These rights included, *inter alia*, that of assigning of rights and licensing under his potential patent, as well as that of collecting royalties for the use of his

---

1. The agreement which was there held to constitute patent misuse provided in part that the distributor

. . . further agrees not to merchandise or offer for sale any merchandise which would be competitive with any . . . merchandise manufactured . . . by the [patentee], without the written approval of [patentee]. . . .

invention. B. F. Gladding & Co. v. Scientific Anglers, Inc., 245 F.2d 722 (6th Cir. 1957); L. L. Brown Paper Co. v. Hydroiloid, 118 F.2d 674 (2d Cir. 1941). Although plaintiff contends that these rights were interrupted by the Patent Office's rejection of all his claims, it is evident from the notice of rejection that it was not final in nature. The applicable statute, 35 U.S.C. § 132, provides in part that

" . . . if after receiving such notice, the applicant persists in his claim for a patent, with or without amendment, the application shall be reexamined. . . ."

Thus, plaintiff's application clearly was still pending at the time he entered into the contract, thereby affording him the inchoate rights which subsequently ripened into his Letters Patent.

Further, as defendant asserts, the contracting parties contemplated plaintiff's patent protection, for the agreement recites that plaintiff is the owner of "protective rights" in the cable stripper. Thus, plaintiff intentionally was using whatever rights he possessed in the product to effect the agreement precluding the sale of competing, nonpatented cable strippers.

Finally, even if plaintiff could be said to have no protective rights in the cable stripper at the time he entered into the contract, the fact that that agreement is in effect concurrently with the patent compels this Court to conclude that plaintiff's patent is now being misused. The Court in Morton Salt Co. v. Suppiger Co., *supra,* determined that the maintenance as well as the procuring of such a restriction constituted misuse. Accordingly, this Court finds that plaintiff's use of the rights which he possessed in his invention to secure an additional right to which he was not entitled, combined with his maintaining the objectionable terms of the contract after these rights had ripened into a patent monopoly, constitutes misuse of his patent for the cable stripper.

Plaintiff's final assertion—that the provision of the Krampe-Weidling contract under dispute has never been enforced in the United States and thus has never enlarged the scope of his patent monopoly in this country—is without merit. Borrowing the Supreme Court's reasoning in United Shoe Machinery Corp. v. United States, 258 U.S. 451, 458, 42 S.Ct. 363, 66 L.Ed. 708 (1922), the court in F. C. Russell Co. v. Consumers Insulation Co., 226 F.2d 373, 376 (3d Cir. 1955) held that the question of enforcement of such a provision was immaterial, since the holder of the patent had given himself the *power* to control distributors' dealing in competitive goods.

In conclusion, this Court is of the opinion that summary judgment is appropriate in this case since, pursuant to Rule 56 of the Federal Rules of Civil Procedure, there are no genuine issues of material fact and defendant is entitled to judgment as a matter of law. The Court notes that the cases cited by plaintiff in support of his proposition that summary judgment was generally inappropriate in patent cases [2] both involved situations wherein there were genuine issues of material fact; in those cases it was the existence of those issues of fact, not the cause of action in patent infringement, which precluded summary judgment.

Accordingly, it is hereby adjudged, ordered and decreed that defendant's motion for summary judgment is granted and that this action is dismissed.

2. Yardley Created Products Co. v. Clopay Corp., 324 F.2d 932 (7th Cir. 1963); Paragon-Revolute Corp. v. C. F. Pease Co., 239 F.2d 746 (7th Cir. 1957).