PAUL E. HAYNES AND ANOTHER, d.b.a. HAYNES BOOKKEEPING AND TAX SERVICE, v. GERHARD A. MONSON AND OTHERS, d.b.a. MONSON, PREESHL, HELSTAD, SHOUP & ASSOCIATES.

224 N. W. 2d 482.

October 4, 1974—No. 44390.

*Richard W. Johnson,* for appellants.
*C. Stanley McMahon,* for respondents.

Heard before MacLaughlin, Yetka, and Scott, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

In this action for breach of contract, plaintiffs appeal from a summary judgment dismissing their action, but preserving for trial defendants' counterclaim for breach of a covenant not to compete. We affirm.

Plaintiffs entered into a contract for the sale of Haynes Bookkeeping and Tax Service in Austin, Minnesota, on March 18, 1970. The total purchase price agreed upon was to be $20,000, with $3,500 down, $2,500 to be paid at a later date, and the balance payable in 36 equal monthly installments of $425.91. On February 1, 1972, defendant purchasers discontinued payment of the monthly installments, leaving a balance of approximately $7,000. This action for breach of contract was commenced in March 1972, and defendants counterclaimed for breach of a covenant not to compete set out in the contract. Summary judgment was entered for defendants and plaintiffs appeal.

Paragraph 3 of the contract for sale provided as follows:

"The Sellers agree that they will not within five (5) years from date hereof, either solely or jointly, with or as manager or agent of any person or corporation, directly or indirectly, carry on or be engaged or interested in the business of bookkeeping, accounting, or tax practice, or permit his name to be used in connection with any such business within fifty (50) miles of Austin, Minnesota."

Following the sale of the business, plaintiff Paul E. Haynes worked for the defendants for approximately 1½ years. In July 1971, he moved to Red Wing, Minnesota, 100 miles from Austin, and opened his new office. However, he neither sold his Austin residence nor disconnected the telephone service and returns to this home every week or two.

Evidence from Haynes' deposition indicates that he continued to furnish bookkeeping and tax services for residents of the city of Austin and that he further filed tax returns for residents of Austin from his Red Wing office. Although he testified that he did work for 45-50 Austin clients through his Red Wing office, he admitted that only two actually came to this office.

The deposition also illuminates the various methods utilized by Haynes to continue his contact with former clients. The information necessary for him to provide his services was either mailed to Red Wing, delivered to Haynes' Austin residence, or left with Haynes' relatives for delivery to him. In an affidavit, Duane Grafe indicated that he had telephoned Haynes' Austin residence, at the suggestion of defendant Gerhard A. Monson, to arrange to have some tax work done. Someone identifying himself as Haynes returned Grafe's call and agreed to do the necessary work. The caller further agreed either to pick up the information or to have Grafe deliver it to the Austin home.

The lower court granted defendants' motion for summary judgment on the basis that there was "no genuine material issue as to whether or not the plaintiff has breached the contract * * *." See, Rule 56.03, Rules of Civil Procedure. Defendants' counterclaim for damages was preserved for trial.

The basic issue for our determination is whether the lower court erred in granting summary judgment in favor of defendants. This court has construed covenants not to compete so as to effectuate the purpose for their inception, i. e., to protect purchasers of a going concern from an infringement upon their investment and the continuation of the business for a profit. To allow one to sell his business, with its accompanying customer lists and files, and then allow him to compete for the patronage of these former customers would be contrary to the covenant, and would frustrate the intent of the parties.

This court has long held that where the restraint is for a "just and honest purpose, for the protection of a legitimate interest of the party in whose favor it is imposed, reasonable as between the parties, and not injurious to the public," that restraint is valid. See, Bennett v. Storz Broadcasting Co. 270 Minn. 525, 533, 134 N. W. 2d 892, 898 (1965) ; National Benefit Co. v. Union Hospital Co. 45 Minn. 272, 47 N. W. 806 (1891) ; 16 Dunnell, Dig. (3 ed.) § 8436. Under these standards, covenants, such as the one before us, should be strictly construed. Naftalin v. John Wood Company, 263 Minn. 135, 116 N. W. 2d 91 (1962).

Furthermore, covenants with rather specific geographic and economic limitations have been enforced. See, generally, Annotation, 87 A. L. R. 329.

Plaintiffs contend that the absence of the element of solicitation should be controlling. Midland Lumber and Coal Co. v. Roessler, 203 Wis. 129, 233 N. W. 614 (1930). We, however, are of the opinion that when one has conducted a business in the same area for many years and has built a sizable clientele, active solicitation on his part is unnecessary to compete so as to defeat the covenant. Solicitation by mere reputation and past business practices is more than sufficient.

Therefore, we conclude that on the basis of the record before us, there existed no genuine issue of material fact, and that the defendants were entitled to judgment as a matter of law.

Affirmed.