COUNTY MATERIALS
CORPORATION,
Plaintiff,

v.

ALLAN BLOCK CORPORATION,
Defendant.

No. 05–C–675–S.

United States District Court,
W.D. Wisconsin.

May 12, 2006.

Gary Ahrens, Michael Best & Friedrich LLP, Milwaukee, WI, for Plaintiff.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Plaintiff County Materials Corporation commenced this declaratory judgment action against defendant Allan Block Corporation seeking a declaration that the covenant not to compete clause contained in its production agreement is unenforceable. Jurisdiction is based on 28 U.S.C. § 1332(a)(1). The matter is presently before the Court on cross-motions for summary judgment. Also before the Court is defendant's motion to dismiss for lack of subject matter jurisdiction. The following facts are either undisputed or those most favorable to the non-moving party.

## BACKGROUND

Plaintiff County Materials Corporation is a Wisconsin corporation with its principal place of business in Marathon, Wisconsin. Plaintiff is engaged in the business of manufacturing concrete block. Defendant Allan Block Corporation is a Minnesota corporation with its principal place of busi-

ness in Edina, Minnesota. Defendant is engaged in the business of developing, marketing and licensing technology for the manufacture of concrete block. Defendant does not manufacture concrete block itself rather its strategy is to direct customers to local producers who serve as "point" people for its products.

On or about April 28, 1993 plaintiff's predecessor in interest County Concrete Corporation (hereinafter County) entered into a production agreement (hereinafter agreement) with defendant wherein defendant granted County the exclusive right to manufacture its block products at County's facilities throughout northwest Wisconsin. Additionally, County was granted the right to sell said block products under the AL-LAN BLOCK trademark. County subsequently assigned its interest in the agreement to plaintiff. Said agreement stated in relevant part as follows:

## ... BACKGROUND:

3.1 Licensor [defendant] has developed certain technology for the construction of retaining walls based on the use of a proprietary design cement block (the "Block"). Licensor has applied for and been granted patents relating to such technology. Licensor has also developed the technology for certain proprietary molds (the "Molds") to be used in the production of the Block. The Molds, the granted patent, the foregoing technology, and all other unpatented related know-how, trade secrets, processes, designs, technical data and inventions, whether patentable or not, owned or used by Licensor in connection with the Block are referred to as the "Technology."

3.2 Licensor also owns the following trademarks and service marks (the "Marks") used or to be used in connection with the Technology:

## ALLAN BLOCK

## ... LICENSE:

... 4.2 This agreement constitutes a license and not an assignment of any rights in the Molds, the Marks, or any of the Technology relating to the Block, all of which remain the property of Licensor.

4.3 So long as Producer is not in default on any of the provisions of this Agreement, Licensor will not give any other person or entity the right to manufacture the Block within the Territory. Nothing contained herein, however, shall be deemed to prohibit any other person or entity from selling the Block within the Territory.

4.4 Licensor shall provide access to and use of marketing literature, engineering data and other information relating to the distribution and sale of the Block as such information becomes available.

## ... PROCEDURES AFTER TERMINATION

10.1 In the event of any termination of this Agreement ... Producer shall: (i) immediately cease to use the Technology, including the Molds;

(ii) immediately return all Technology, including specifically the Molds, to Licensor ... and (iii) immediately cease manufacture of the Block.

## ... GENERAL TERMS:

... 16.11 This Agreement shall be interpreted under and governed by the laws of the State of Minnesota.

In addition to the relevant provisions outlined above the agreement contained a covenant not to compete which stated in relevant part as follows:

## ... NONCOMPETITION

13.1 The parties agree that during the term of this agreement, and for a period of eighteen months following the termination of this agreement, Producer will not directly or indirectly engage in the manufacture and/or sale of any other mortarless, stackable, concrete block retaining wall product, with the following exceptions: 1) The Versa-lok product line for resale, 2) Manufacture, market and promote the "Wall Block" product currently in production at their facility.

13.2 The parties intend that this covenant not to compete shall be construed as a series of separate covenants, one for each county, state and/or geographical area where the Block is being sold.

Evidence contained within the record demonstrates that the parties negotiated the terms of the covenant not to compete. As originally written, said covenant included the language "[t]he Versa-lok product line for resale, but shall not engage in marketing, promotion or general sales of the same[.]" However, the final agreement failed to contain language concerning plaintiff's ability to market, promote or sell its Versa-lok product. Additionally, Mr. Robert Gravier who serves as defendant's president declared that the parties negotiated the covenant not to compete to render it reasonable and acceptable to both parties. Accordingly, the final covenant not to compete which became part of the agreement was the result of negotiations between the parties.

Plaintiff served as defendant's exclusive producer in northwest Wisconsin for a period of twelve years. This twelve year relationship proved lucrative for plaintiff as evidenced by the fact that its sales of ALLAN BLOCK products totaled nearly $1,000,000 in 2005.

Additionally, throughout said twelve year period defendant provided plaintiff with technical and engineering assistance which included sending defendant's vice-president and director of engineering Mr. Timothy Bott to plaintiff's Eau Claire, Wisconsin facility when it initially began production of the block. Mr. Bott assisted with the molds and trained plaintiff's staff about differences between the products and configurations of the molds. Further, throughout the course of the parties' twelve year relationship Mr. Bott made several subsequent visits as well as numerous telephone calls to both plaintiff's Eau Claire and Milwaukee area facility. During said visits and telephone conversations Mr. Bott and plaintiff discussed mix design and issues concerning product manufacturing. Finally, Mr. Gravier testified at his deposition that defendant provided plaintiff with confidential information. Specifically, Mr. Gavier testified defendant provided plaintiff with a "stream of information relating to the technology" which encompassed aspects of manufacturing, molds, and engineering.

Marketing support was an additional aspect of the parties' agreement. First, defendant provided plaintiff with virtually all of its marketing materials. Additionally, defendant maintained a team specifically dedicated to creating and advancing its branded marketing initiatives through its producers including plaintiff. Finally, defendant maintained a website which directed interested potential customers to the recognized producer within their territory. The record demonstrates that plaintiff benefitted from defendant's marketing initiatives because there is no evidence that any other entity sold block products under the ALLAN BLOCK mark within plaintiff's territory while it remained defendant's exclusive producer for northwest Wisconsin. Accordingly, it follows that for twelve years plaintiff was the only entity

associated with the ALLAN BLOCK mark in northwest Wisconsin.

On April 27, 2005 defendant notified plaintiff by letter of its intent to terminate the agreement. At the time of termination, plaintiff was aware that a considerable market for landscape block existed. Accordingly, plaintiff's sales manager of landscape operations Mr. Dale Laurin and plaintiff's production manager Mr. Michael Zuehlke began designing a new standard block which would serve as a comparable landscape product to defendant's ALLAN BLOCK. Plaintiff's intent was to introduce its new block into the market that it previously served with defendant's ALLAN BLOCK products.

In or about May of 2005 plaintiff completed its design work for a new mortarless stackable concrete block retaining wall product (hereinafter new block) which was neither a Versa-lok nor a Wall Block product. Plaintiff's design was subsequently refined. However, once plaintiff completed its initial design work it undertook additional steps to prepare for mass manufacture of its new block. Such steps included: (1) researching whether the new block could be efficiently manufactured for sale, (2) soliciting bids from contractors to manufacture the tooling necessary to complete molds which would be used to mass produce the block, (3) constructing the standard mold for the new block; and (4) producing a prototype of the new block.

On November 9, 2005 defendant sent plaintiff a letter which stated in relevant part as follows:

... On May 10th we sent a letter to you with a recommendation that we conclude our business partnership in an amicable and cooperative fashion. Part of our list of action items asked for a full accounting of the molds and mold parts and other "Technology" specifically related to Allan Block ... To date we have not received any indication that you intend to comply or cooperate.

To reiterate, Section 10.1 clearly states that "In the event of any termination of this Agreement, ... Producer shall: (i) immediately cease to use the Technology, including the molds; (ii) immediately return all Technology, including specifically the Molds, ... and (iii) immediately cease manufacture of the block." Clearly you are in violation of these requirements.

... If you don't contact us and indicate your willingness to cooperate, we will place the matter in the hands of our attorney and pursue the resolution through the courts.

On November 16, 2005 plaintiff filed its complaint in this action. Additionally, plaintiff continued to prepare for the manufacture of its new block. In December of 2005 plaintiff's prototype block failed Mr. Laurin's visual inspection. Accordingly, Mr. Laurin rejected it and he made alterations to the new block which was now entitled Victory Block. Mr. Laurin declared that such modifications were necessary to improve the marketability of Victory Block. A final prototype for Victory Block was complete in January of 2006 and materials for its manufacture were available in March of 2006. Accordingly, plaintiff began selling Victory Block in April of 2006.

## MEMORANDUM

Plaintiff asserts the agreement constituted a patent license because without such a license plaintiff could not have lawfully manufactured or sold defendant's patented block product. Accordingly, plaintiff asserts the covenant not to compete contained within the license agreement is unenforceable because a patentee cannot attach a condition to a license that enlarges its patent monopoly to prevent competi-

tion. Additionally, plaintiff asserts the covenant not to compete: (1) fails to serve a proper purpose, (2) is not reasonable because it provides defendant with an unfair advantage; and (3) is not reasonable because it prevents the use of information located in the public domain from being used to design a new product for the marketplace which has a deleterious effect on the interests of the general public. Accordingly, plaintiff argues it is entitled to summary judgment declaring that the covenant not to compete contained within its production agreement is unenforceable.

Defendant asserts plaintiff failed to establish that litigation over the covenant not to compete was imminent when it filed its complaint. Additionally, defendant asserts plaintiff failed to demonstrate that it possessed the ability to immediately produce its competing Victory Block when it filed its complaint. Accordingly, defendant argues no actual controversy existed which necessitates dismissal of the action for lack of subject matter jurisdiction.

Additionally, defendant asserts the agreement did not constitute a patent license rather it was a production agreement which granted plaintiff the right to produce and sell defendant's products under its trademarks. Accordingly, defendant asserts the covenant not to compete cannot serve as an improper attempt to expand its patent rights. Further, defendant asserts the covenant not to compete is valid under state law because it: (1) is for a proper purpose, (2) is reasonable between the parties; and (3) is not injurious to the public. Accordingly, defendant argues it is entitled to summary judgment declaring the covenant not to compete enforceable as a matter of law.

## A. Subject matter jurisdiction

The purposes of declaratory judgments are to "clarify[ ] and settl[e] the legal relations at issue" and to "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Tempco Elec. Heater Corp. v. Omega Eng'g., Inc.*, 819 F.2d 746, 749 (7th Cir.1987) *(quoting* Borchard, *Declaratory Judgments* 299 (2d ed.1941)). Accordingly, declaratory judgment actions serve an important role because they permit prompt settlement of actual controversies and establish the legal rights and obligations that will govern the parties' relationship in the future. *Hyatt Int. Corp. v. Coco,* 302 F.3d 707, 711 (7th Cir.2002)(*citing* Edwin Borchard, *Declaratory Judgments* 107 (1934)).

However, under the Declaratory Judgment Act, 28 U.S.C. § 2201, an actual controversy must exist for a court to render a declaratory judgment. *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 627 (7th Cir.1995) (citations and internal quotation marks omitted). To determine whether an actual controversy exists "the question in each case is whether the facts alleged, under all circumstances, show that there is a controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)). Accordingly, essentially two related but distinct fact situations are contemplated in declaratory judgment actions: (1) the controversy has ripened to a point where one of the parties could invoke a coercive remedy such as a suit for damages or an injunction but has not done so; and (2) the controversy is real and immediate. However, it is not ripened to such a point and it would be unfair or inefficient to require the parties to wait for a decision. *Tempco Elec. Heater Corp.*, at 749. This action is of the second type.

Plaintiff contends defendant's November 9, 2005 letter threatened suit on the contract at issue. Accordingly, plain-

tiff argues defendant's threats alone were sufficient to establish the factual showing necessary to meet the real and immediate possibility of litigation requirement. However, decisions concerning declaratory judgments advise that the threat of suit is not by itself sufficient for an invocation of the federal power to issue a declaratory judgment. *Hyatt Int'l. Corp.*, at 712. Additionally, the language of defendant's November 9, 2005 letter clearly demonstrates that the covenant not to compete was not at issue for defendant at such time rather section 10.1 and the return of its technology was defendant's concern. Accordingly, plaintiff cannot rely on the threat of suit as its basis for filing its declaratory judgment action.

■ However, a declaratory judgment action is proper when a declaration of rights is a bona fide necessity for the natural defendant/declaratory judgment plaintiff to carry on with its business. *Id.* Additionally, a plaintiff's interest is sufficiently real where "he alleges that he is actively preparing to produce the article in question ... [b]y making active preparations [,] he has shown that he has more than a mere speculative interest ... [rather] [h]is interest is direct, real, and immediate." *G. Heileman Brewing Co., Inc. v. Anheuser–Busch, Inc.*, 873 F.2d 985, 990–991 (7th Cir.1989) *(citing* 6A J. Moore, *Moore's Federal Practice* ¶ 57.20, at 57–217).

■ Paragraph twenty-one of plaintiff's amended complaint alleges: "[o]n November 16, 200[5], [plaintiff] intended to, and was in a position to, have its new standard block ready for sale by mid-December." Additionally, Mr. Laurin declared that in or about May of 2005 plaintiff completed its design work for the new block and it: (1) researched whether the new block could be efficiently manufactured for sale, (2) solicited bids from contractors to manufacture the tooling necessary to complete

molds which would be used to mass produce the block, (3) constructed the standard mold for the new block; and (4) produced a prototype of the new block. While plaintiff did not begin selling and installing its Victory Block until April of 2006 the facts demonstrate that its interests at the time it filed its complaint were not merely speculative. Accordingly, although the facts in existence at the time plaintiff filed its complaint may not have presented a fully ripe dispute such circumstances presented a sufficiently real and immediate controversy in which it would have been unfair or inefficient to require the parties to wait for a decision. *See Id.* at 991 *(citing Tempco Elec. Corp.*, at 749). Defendant's motion to dismiss for lack of subject matter jurisdiction is denied and the Court will proceed to decide the parties' cross-motions for summary judgment.

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material only if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Disputes over unnecessary or irrelevant facts will not preclude summary judgment. *Id.* Further, a factual issue is genuine only if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. *Id.* A court's role in summary judgment is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511.

To determine whether there is a genuine issue of material fact for trial courts con-

strue all facts in the light most favorable to the non-moving party. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir.2003) (citation omitted). Additionally, a court draws all reasonable inferences in favor of that party. *Id.* However, the non-movant must set forth "specific facts showing that there is a genuine issue for trial which requires more than just speculation or conclusory statements." *Id.* at 283 (citations omitted).

As a preliminary matter, the Court will address all nondispositive motions filed by plaintiff. First, plaintiff moved the Court to reconsider or clarify its March 29, 2006 order granting defendant's motion to strike evidence and argument concerning the existence or nonexistence of patent infringement by plaintiff's Victory Block. The Court finds such evidence and argument is not relevant to its analysis of the issues involved in this action. Accordingly, the Court denies plaintiff's motion.

Additionally, plaintiff moved the Court to exclude portions of Mr. Bott and Mr. Gravier's initial and supplemental declarations from consideration on summary judgment. Having reviewed such challenged portions the Court finds no merit in plaintiff's motions. The Court considers such paragraphs in so far as they are made on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that the declarant is competent to testify to the matters stated therein. Fed.R.Civ.P. 56(e).

■ Further, plaintiff moved the Court to strike matters from defendant's reply brief which it filed in support of its motion for summary judgment because it asserts defendant raises new issues and arguments for the first time in said brief. It is improper to raise new matters in reply. *See Marie O. v. Edgar*, 131 F.3d 610, 614 n. 7 (7th Cir.1997). However, having reviewed defendant's reply brief the Court finds it did not improperly raise new issues. For example, plaintiff asserts defendant's reply contains a new argument concerning patent misuse. Patent Misuse has been at issue throughout the course of these proceedings. Plaintiff itself relies on the defense on patent misuse (although it fails to specifically title it as such) throughout its summary judgment motion as well as in its response to defendant's motion for summary judgment. *See* plaintiff's brief in response to defendant's motion for summary judgment page seven "the legal standard for evaluating a non-compete in a patent license is whether it extends the legitimate scope of [defendant's] patent monopoly." Such argument by definition involves patent misuse. Accordingly, defendant was entitled to respond and plaintiff's motion is denied.

Finally, plaintiff moved the Court for an order: (1) removing all confidential designations from transcripts of deposition testimony given by Mr. Bott, Mr. Gravier and Mr. Chad Julius; and (2) unsealing all transcripts and papers filed under seal on the basis of those designations which includes docket numbers 55, 57, 58, 61, 65 and 67. Plaintiff's motion is one of form over substance. There is a protective order in place for this action which gave defendant the right to designate such information and testimony confidential. Accordingly, plaintiff's motion is denied. With the non-dispositive motions decided the Court will now proceed to address the parties' dispositive cross-motions for summary judgment.

## A. Patent license and patent misuse

■ Plaintiff asserts the agreement constituted a patent license because without such a license it could not have lawfully manufactured or sold defendant's patented block product. Defendant asserts the agreement did not constitute a patent license rather it was a production agreement which granted plaintiff the right to

produce and sell defendant's products under its trademark.

A patent license exists when either language used by the patent owner or conduct on the part of the patent owner infers that it consents to use of the patent. *De Forest Radio Tel. & Tel. Co. v. United States*, 273 U.S. 236, 241, 47 S.Ct. 366, 367, 71 L.Ed. 625 (1927). Consent can be provided to either: (1) make or use items subject to the patent, or (2) sell items subject to the patent. *See Id.* However, a formal granting of a license is unnecessary for one to be in effect. *Id.* Language used by defendant in the agreement demonstrates that it gave plaintiff consent to use its patent to manufacture and sell its ALLAN BLOCK product. Without such consent plaintiff could not have lawfully manufactured the ALLAN BLOCK product. Accordingly, said agreement in part constitutes a patent license.

Defendant granted plaintiff the right to use its technology in connection with the manufacture of ALLAN BLOCK at its facilities in northwest Wisconsin. Language contained within the agreement concerning such technology stated in relevant part as follows:

... **BACKGROUND:**

3.1 Licensor [defendant] has developed certain technology for the construction of retaining walls based on the use of a proprietary design cement block (the "Block"). Licensor has applied for and been granted patents relating to such technology. Licensor has also developed the technology for certain proprietary molds (the "Molds") to be used in the production of the Block. The Molds, the granted patent, the foregoing technology, and all other unpatented related know-how, trade secrets, processes, designs, technical data and inventions, whether patentable or not, owned or used by Licensor in connection with the Block are referred to as the "Technology."

Accordingly, part of defendant's "Technology" that was utilized by plaintiff included its granted patent. Said "Technology" was licensed to plaintiff as evidenced by section 4.2 of the agreement. Section 4.2 stated as follows:

4.2 This agreement constitutes a license and not an assignment of any rights in the Molds, the Marks, or any of the Technology relating to the Block, all of which remain the property of Licensor.

A patent license whether express or implied serves as a contract which is governed by ordinary principles of state contract law. *State Contracting & Eng'g. Corp. v. State of Fla.*, 258 F.3d 1329, 1339 (Fed.Cir.2001), *reh'g. and reh'g. en banc denied*, (Sept. 6, 2001) (citations and internal quotation marks omitted). Under Wisconsin contract law principles terms used in a contract are to be given their plain or ordinary meaning if such words are clear and unambiguous. *Riegleman v. Krieg*, 2004 WI App 85, ¶ 20, 271 Wis.2d 798, 808, 679 N.W.2d 857, 863 (Ct.App.2004), *petition for review denied*, (June 8, 2004) (citation omitted). The language of section 4.2 is clear and unambiguous and must be given its plain and ordinary meaning. According to said section, the agreement constituted a license to use the Molds, the Marks and the Technology relating to the Block which included among other things defendant's granted patent. Accordingly, the clear and unambiguous language used by defendant demonstrates that the agreement in part constituted a patent license.

However, it does not necessarily follow that defendant engaged in patent misuse simply because the agreement contained a patent license. Plaintiff contends defendant conditioned the license on a covenant

not to compete which prohibited it from manufacturing and selling competing products. Accordingly, plaintiff argues defendant misused its patent by enlarging its monopoly to prevent competition. Defendant asserts it did not misuse its patent because the covenant not to compete was not negotiated with the leverage of its patent.

A patentee has the exclusive right to manufacture, use and sell its invention and at the heart of its legal monopoly is the right to invoke the State's power to prevent others from utilizing its discovery without its consent. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 135, 89 S.Ct. 1562, 1583, 23 L.Ed.2d 129 (1969) (citations omitted). Additionally, the law recognizes that a patent owner may license others to practice its invention. *Id.* However, a patent owner cannot attach a condition to its license that enlarges the scope of its patent monopoly. *Ethyl Gasoline Corp. v. United States,* 309 U.S. 436, 456, 60 S.Ct. 618, 625, 84 L.Ed. 852 (1940). Such an attempt to impermissibly broaden the scope of a patent grant constitutes patent misuse. *Windsurfing Int'l., Inc. v. AMF, Inc.,* 782 F.2d 995, 1001 (Fed.Cir.1986) (citations omitted), *cert. denied,* 477 U.S. 905, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986).

Patent misuse typically occurs when a patentee attempts to employ the leverage of its patent to: (1) condition its license so as to tie to the use of the patented device or process the use of other devices, processes or materials which lie outside of the patent monopoly, *Ethyl Gasoline Corp.,* at 456, 60 S.Ct. at 625 (citations omitted), (2) collect royalties beyond the expiration date of the patent, *Brulotte v. Thys Co.,* 379 U.S. 29, 32, 85 S.Ct. 176, 179, 13 L.Ed.2d 99 (1964), *reh'g. denied,* 379 U.S. 985, 85 S.Ct. 638, 13 L.Ed.2d 579 (1965), (3) require a licensee to pay royalties on products that fail to use the teaching of a patent, *Zenith Radio Corp.,* at 136, 89 S.Ct. at 1583; and (4) engage in price fixing, *U.S. Gypsum Co. v. Nat'l. Gypsum Co.,* 352 U.S. 457, 472, 77 S.Ct. 490, 498, 1 L.Ed.2d 465 (1957), *reh'g. denied,* 353 U.S. 932, 77 S.Ct. 716, 1 L.Ed.2d 724 (1957).

Additionally, provisions contained within a patent license that require a party to refrain from dealing in products which compete with the patented product have been held to constitute patent misuse per se. *See Nat'l. Lockwasher Co. v. George K. Garrett Co.,* 137 F.2d 255 (3rd Cir.1943); *Krampe v. Ideal Indus., Inc.,* 347 F.Supp. 1384 (N.D.Ill.1972).

However, presently rulings of the Federal Circuit are controlling in matters of patent law. 28 U.S.C. § 1295(a)(1). As a prerequisite to establishing patent misuse the Federal Circuit requires a factual determination of overall harm to competition. *Windsurfing Int'l., Inc.,* at 1001–1002. Specifically, said requirement applies to licensing agreement provisions not previously held to be per se anti-competitive by the Supreme Court. *Id.* at 1001. In announcing said rule the Federal Circuit noted that "[r]ecent economic analysis questions the rationale behind holding any licensing practice as per se anticompetitive." *Id.* at 1002 n. 9 (*citing USM Corp. v. SPS Tech., Inc.,* 694 F.2d 505, 510–514 (7th Cir.1982), *cert. denied,* 462 U.S. 1107, 103 S.Ct. 2455, 77 L.Ed.2d 1334 (1983)). Plaintiff failed to cite and this Court failed to locate any Supreme Court decision which holds provisions of this type per se anti-competitive. Accordingly, a finding of overall harm to competition is a necessary predicate to establishing patent misuse.

By definition a covenant not to compete imposes a restraint on trade. However, evidence contained within the record fails to demonstrate that the effect of the covenant not to compete at issue is such that it tends to unlawfully restrain

competition. Accordingly, defendant did not engage in patent misuse by including the covenant not to compete in the agreement. The covenant not-to-compete at issue states as follows:

## ... NONCOMPETITION

13.1 The parties agree that during the term of this agreement, and for a period of eighteen months following the termination of this agreement, Producer will not directly or indirectly engage in the manufacture and/or sale of any other mortarless, stackable, concrete block retaining wall product, with the following exceptions: 1) The Versa-lok product line for resale, 2) Manufacture, market and promote the "Wall Block" product currently in production at their facility.

13.2 The parties intend that this covenant not to compete shall be construed as a series of separate covenants, one for each county, state and/or geographical area where the Block is being sold.

 Plaintiff by the very terms of the covenant not to compete could continue to manufacture and sell its Versa-lok and "Wall Block" products both while the agreement was in effect and upon its termination which indicates that precautions were taken to guarantee plaintiff could always compete with defendant in the landscape block market. Additionally, the parties negotiated the terms of the covenant not to compete to render it reasonable and acceptable to both parties which demonstrates that defendant was not attempting to use the leverage of its patent to engage in anticompetitive measures. Accordingly, defendant did not attach the covenant not to compete to its license agreement to impermissibly enlarge the scope of its patent monopoly. Because patent misuse did not occur interpreting the validity of the covenant not to compete

under state contractual law does not "stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in the area of patent law. *See Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 479–480, 94 S.Ct. 1879, 1885, 40 L.Ed.2d 315 (1974). Accordingly, the validity and enforceability of the covenant not to compete will be decided by applying principles of state contractual law.

## B. Validity/Invalidity of covenant not to compete under state law

 As an initial matter, the Court must determine which State law governs this action. The agreement contains a choice of law provision which states as follows:

### ... GENERAL TERMS:

... 16.11 This Agreement shall be interpreted under and governed by the laws of the State of Minnesota.

However, plaintiff asserts Wisconsin law applies. Plaintiff chose Wisconsin as the forum for this declaratory judgment action. Accordingly, Wisconsin's conflicts of law rules apply. *Sonoco Bldgs., Inc., Div. of Sonoco Prods. Co. v. Am. Home Assurance Co.,* 877 F.2d 1350, 1352 (7th Cir.1989) (citations omitted). Under Wisconsin law parties to a contract may expressly agree that the law of a particular jurisdiction will control their contractual relationship. *See Jefferis v. Kanawha Fuel Co.,* 182 Wis. 203, 196 N.W. 238 (1923). However, parties cannot be permitted to so agree at the expense of important public policies of a state whose law would be applicable if the parties choice of law provision were disregarded. *Bush v. Nat'l School Studios, Inc.,* 139 Wis.2d 635, 642, 407 N.W.2d 883, 886 (1987).

Plaintiff asserts because the agreement applies to Wisconsin activities Wisconsin has a strong public policy interest in ap-

plying its law over contracting parties' choice of foreign law. Plaintiff cites *Bush*, at 643, 407 N.W.2d 883; *Beilfuss v. Huffy Corp.*, 274 Wis.2d 500, 507–508, 685 N.W.2d 373 (Ct.App.2004) as support. Both cases stand for the proposition that statutes which make a particular contract provision unenforceable "e.g., laws prohibiting covenants not to compete" are likely to embody an important state public policy interest sufficient to warrant overriding a contractual choice of law stipulation. *See Bush*, at 643, 407 N.W.2d 883; *Beilfuss*, 2004 WI App 118,¶ 13, 274 Wis.2d at 508, 685 N.W.2d 373, 377.

 Wisconsin possesses a law that invalidates covenants not to compete in certain situations. Said law is Wis. Stat. § 103.465. Accordingly, if Wis. Stat. § 103.465 applies to this action public policy concerns would mandate overriding the parties' contractual choice of law stipulation. Wis. Stat. § 103.465 states in relevant part as follows:

> 103.465 Restrictive covenants in employment contracts
>
> A covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the employment or agency, or after the termination of that employment or agency ... is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal.

Wis. Stat. § 103.465 does not control this action because the covenant not to compete at issue was not included as part of an employment contract. Additionally, plaintiff did not serve as an assistant, servant or agent of defendant. Accordingly, because plaintiff failed to cite any other public policy ground which would warrant overriding the choice of law provision the Court will honor the parties' express agreement and interpret the covenant not to compete under Minnesota law.

 A covenant not to compete is valid where said restraint: (1) is for the protection of a legitimate interest of the party in whose favor it is imposed, (2) is reasonable as between the parties; and (3) is not injurious to the public. *Haynes v. Monson*, 301 Minn. 327, 330, 224 N.W.2d 482, 483 (1974) (citations omitted). Additionally, covenants with rather specific geographic and economic limitations have been enforced. *Id.* at 330, 224 N.W.2d 482, 224 N.W.2d at 484 *(citing* 87 A.L.R. 329). However, covenants not to compete should be strictly construed because they constitute partial restraints of trade. *See Bennett v. Storz Broadcasting Co.*, 270 Minn. 525, 533, 134 N.W.2d 892, 898 (1965) (citation omitted).

### 1. Legitimate interests of defendant

 For a period of twelve years plaintiff was granted the right to use the ALLAN BLOCK trademark. Defendant asserts this right provided plaintiff an opportunity to trade on the established goodwill and customer association of defendant and its products. Additionally, defendant asserts it provided plaintiff an opportunity to "build up a customer base." Accordingly, defendant argues the covenant not to compete is necessary to protect its legitimate business interest because it prevents plaintiff from unfairly exploiting the entire business package defendant provided for twelve years. Plaintiff asserts the covenant not to compete fails to serve a proper purpose because the agreement was not exclusive and defendant could continue to compete with plaintiff in northwest Wisconsin throughout the twelve year term of the agreement. Accordingly, defendant asserts exclusive brand-name linkage does not exist in this action.

 Restrictive covenants are enforced to the extent reasonably necessary to protect legitimate business interests. *Med-*

*tronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 456 (Minn.Ct.App.2001) (citation omitted). Legitimate interests that may be protected include a company's "goodwill, trade secrets, and confidential information." *Id.* Such legitimate interests exist in this action.

Plaintiff used defendant's ALLAN BLOCK trademark for twelve years while it served as its exclusive producer in northwest Wisconsin. Additionally, evidence contained within the record demonstrates that while the agreement was in effect defendant was the only producer who sold ALLAN BLOCK products in northwest Wisconsin. Accordingly, plaintiff benefitted from defendant's name recognition and goodwill because by its own account its sales of ALLAN BLOCK products totaled nearly $1,000,000 in 2005 which demonstrates that plaintiff built a significant ALLAN BLOCK client base during the twelve year term of the agreement. Further, throughout the course of the parties' relationship defendant provided plaintiff with engineering and technical assistance, marketing support and a "stream of information relating to the technology" which Mr. Gravier testified included confidential information. Accordingly, defendant has a legitimate business interest to protect and prong one of the *Haynes* test is satisfied.

## 2. Reasonable as between the parties

■ Defendant asserts the covenant not to compete is reasonable because it: (1) has a reasonable temporal limit, (2) has a reasonable geographic limit; and (3) was negotiated in good faith. Plaintiff asserts the temporal and geographic limitations of the covenant not to compete are not reasonable because the agreement was never exclusive.

■ For a covenant not to compete to be reasonable it must not impose any greater restrictions than are necessary to protect a legitimate business interest. *See*

*Dynamic Air, Inc. v. Bloch*, 502 N.W.2d 796, 799 (Minn.Ct.App.1993) (citation omitted). Considerations such as: (1) the nature and extent of the business, (2) the time for which the restriction is imposed; and (3) the territorial extent of the covenant are factors used to determine whether a covenant not to compete is reasonable. *Id.* The covenant not to compete at issue is reasonable as between the parties.

Plaintiff served as defendant's exclusive producer in northwest Wisconsin for twelve years. During said twelve year period defendant provided plaintiff with: (1) its engineering and marketing support, (2) its Technology including specifically its molds; and (3) the right to sell its products under the ALLAN BLOCK trademark. Upon termination of the agreement defendant needed to invest its time as well as its effort to develop another producer in the northwest Wisconsin territory. Accordingly, considering the extent to which the parties businesses were intertwined for such a considerable period of time an eighteen month covenant not to compete is reasonable. Additionally, the covenant not to compete only extends to the geographic area where plaintiff sold ALLAN BLOCK. Such a territorial limitation is reasonable considering the exclusivity of the agreement because without such a restriction plaintiff could unfairly exploit defendant's ALLAN BLOCK customer base. Accordingly, prong two of the *Haynes* test is satisfied.

## 3. Injurious to the public

■ Defendant asserts the covenant not to compete is not injurious to the public because production of landscape block is open to anyone except for plaintiff who is only temporarily excluded. Plaintiff asserts the covenant not to compete is injurious to the public because the agreement is a patent license and defendant is attempting to prohibit plaintiff from using

information in the public domain to design a new product.

Where multiple producers of like goods are present within a territory the general public is not injured because it is not subject to a monopoly or other injury. *See Bess v. Bothman,* 257 N.W.2d 791, 795 (1977). Plaintiff failed to present any evidence which demonstrates that the general public in northwest Wisconsin is subject to a landscape block monopoly. Accordingly, the covenant not to compete is not injurious to the public and the third and final prong of the *Haynes* test is satisfied. Because all three prongs of the *Haynes* test are satisfied it necessarily follows that the covenant not to compete at issue in this action is valid and enforceable.

## ORDER

IT IS ORDERED that plaintiff's motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that defendant's motion to dismiss for lack of subject matter jurisdiction is DENIED.

IT IS FURTHER ORDERED that defendant's motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that judgment is entered in favor of defendant against plaintiff dismissing the action and all claims contained therein with prejudice and costs.