**DYNAMIC AIR, INC., Appellant,**

v.

**Jon C. BLOCH, Whirl–Air–Flow Corporation, Respondents,**

**XYZ Company, et al., Defendants.**

No. C8–93–747.

Court of Appeals of Minnesota.

July 6, 1993.

Edward F. Fox, Donald W. Niles, Doherty, Rumble & Butler, St. Paul, for Dynamic Air, Inc.

Jerry W. Snider, William L. Roberts, Faegre & Benson, Minneapolis, for Jon C. Bloch.

Stephen B. Young, Paul E. Overson, Hillstrom, Bale, Anderson, Young, Polstein & Pearson, Minneapolis, for Whirl–Air–Flow Corp.

Considered and decided by FORSBERG, P.J., and PARKER and HOLTAN,* JJ.

## OPINION

PARKER, Judge.

The district court denied appellant Dynamic Air's motion for a temporary injunction to enforce confidentiality, nonsolicitation, and nonemployment covenants on the ground that the covenants lacked a territorial limit. Dynamic Air contends the trial court erred in determining that Minnesota law prohibits enforcement of restrictive covenants lacking territorial limits. We agree and reverse.

## FACTS

Respondent Jon Bloch worked as an intern for Dynamic Air, Inc., in 1989 while attending college. After earning a B.S. degree in industrial technology, he was hired by Dynamic Air in August 1989 as a full-time sales application engineer. At that time, he signed an employment agreement containing several restrictive covenants.

The covenants prohibited Bloch from (1) disclosing confidential information about Dynamic Air; (2) soliciting Dynamic Air customers with whom he had worked; and (3) working for a competitor of Dynamic Air selling "conflicting products." The nonsolicitation and nonemployment covenants were limited to two years following

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

Bloch's termination from Dynamic Air. The agreement also provided that Dynamic Air would compensate Bloch in the event he was unable to secure similar employment elsewhere at the same salary level. The agreement lacked a provision limiting the application of the covenants to a specific geographic area.

In August 1991 Bloch was promoted to sales manager for the region comprising Texas, Oklahoma, and Arkansas. James Steele, president of Dynamic Air, stated in an affidavit that Bloch had direct responsibility for developing Dynamic Air's bids for new projects. Additionally, he said Bloch was familiar with Dynamic Air's designs, formulas, confidential price lists, pricing strategies, customer and vendor lists, engineering drawings, and testing methods.

In October 1992 Bloch began looking for other employment. He eventually received a job offer from Respondent Whirl–Air–Flow Corporation (Whirl–Air). When Bloch resigned from his employment in March 1993, Steele told him that working for Whirl–Air would be a breach of the restrictive covenants.

Bloch asserts he has no customer lists, drawings, catalog pricing, or other documents relating to Dynamic Air in his possession. He states by affidavit that any knowledge he acquired of Dynamic Air's designs, systems, pricing, and method of operation would be of little use in his new position because each company's approach to designing bulk moving systems varies. He affirms that he has no intention to disclose any knowledge of Dynamic Air systems to Whirl–Air.

Dynamic Air, a Minnesota corporation with headquarters in St. Paul, custom designs bulk moving systems for industrial companies. Dynamic Air has sold its systems throughout the United States and abroad.

Dynamic Air maintains confidential sales data such as customer lists, proposal listings, price lists, and vendor and materials sources. According to Steele, Bloch's knowledge of Dynamic Air's open proposals and bidding strategy could be used to improve Whirl–Air's proposals and to alert Whirl Air to previously unknown competitive opportunities.

Whirl–Air is a Minnesota corporation with its principal place of business in Minneapolis. The company designs and manufactures custom-made "systems" for moving bulk materials. Gregg Hedtke, sales manager for Whirl–Air, states in an affidavit that the systems do not rely on any patent, trade secret, or proprietary information. Instead, the company sells a design and engineering service to design equipment to meet the special needs of each customer. Customers solicit bids for design and construction of a bulk moving system. Winning bids are selected on the basis of design, price, delivery schedule, and the precision of manufacturing details. These systems have a useful life of "many, many years." After a system is installed, follow-up business with the customer consists of supplying parts and routine maintenance.

Hedtke states that the nature of sales in his business is different from that in other businesses. Sales do not depend on "customer lists or repeat calls on an existing customer base soliciting additional business." Consequently, he asserts, "there is little concern for the appropriation of customer lists or proprietary information." Hedtke adds that individuals frequently move from company to company in this industry and that a number of individuals have moved from Dynamic Air to Whirl–Air and vice versa.

Ed Mueller, vice president of Whirl–Air, states in an affidavit that when interviewing with Bloch he did not inquire about Dynamic Air's business methods, prices, vendors, customers, technologies, or any other confidential or proprietary information; that Bloch did not volunteer such information; and that Whirl–Air does not intend to ask Bloch for such information.

Dynamic Air filed suit to enjoin Bloch's employment with Whirl–Air and moved for a temporary injunction enforcing the restrictive covenants. Dynamic Air also offered to continue to pay Bloch's salary during the two-year period the restrictive

covenant is in effect. The district court found:

1. Dynamic Air would suffer immediate, irreparable harm from disclosure of confidential information.
2. The terms of the restrictive agreement were reasonable and necessary to protect Dynamic Air's legitimate commercial interests.
3. Bloch's employment with Whirl Air risked disclosure of confidential information.
4. The harm to Dynamic Air from denial of its motion would be greater than the harm to Bloch from granting of the motion.

Nonetheless, the district court, citing an unpublished opinion of this court, denied the temporary injunction on the ground that Minnesota law prohibits enforcement of restrictive covenants unlimited as to territory. This appeal followed.

## ISSUE

Does Minnesota law prevent enforcement of restrictive covenants lacking territorial limitations?

## DISCUSSION

■ A district court's denial of a motion for temporary injunction will be upheld unless the court clearly abused discretion by disregarding the facts or by misapplying the rules of equity. *Thompson v. Barnes,* 294 Minn. 528, 533, 200 N.W.2d 921, 925 (1972). Dynamic Air contends that the district court erroneously interpreted the rules of equity. We agree.

The trial court erred in concluding that Minnesota law prohibits enforcement of restrictive covenants lacking a territorial limitation.

■ Restrictive covenants limit one's right to work and to earn a livelihood and therefore are "looked upon with disfavor, cautiously considered, and carefully scrutinized." *Bennett v. Storz Broadcasting Co.,* 270 Minn. 525, 533, 134 N.W.2d 892, 898 (1965). Such covenants are upheld nonetheless if the restriction is necessary for the protection of the business or the

good will of the employer. *Id.* at 533, 134 N.W.2d at 899. If the court finds the covenant to be necessary, it must consider the reasonableness of the scope of the covenant. *Id.* at 534, 134 N.W.2d at 899. The covenant must not impose any greater restriction on the employee than is necessary to protect the employer's business. *Id.*

■ In analyzing the reasonableness of a covenant, the court considers the nature and character of the employment, the nature and extent of the business, the time for which the restriction is imposed, the territorial extent of the covenant, and other pertinent conditions. *Id.*

Territorial limitations thus are but one of several factors a trial court is to consider in determining the reasonableness of a restrictive covenant. The territorial limitation, however, is an important factor. For example, in several cases Minnesota appellate courts have held that restrictive covenants containing neither a territorial nor a time limit are unenforceable. *Bess v. Bothman,* 257 N.W.2d 791, 794 (Minn.1977); *Harris v. Bolin,* 310 Minn. 391, 395, 247 N.W.2d 600, 603 (1976); *Larx v. Nichol,* 224 Minn. 1, 28 N.W.2d 705, 710 (1947); *Bellboy Seafood Corp. v. Nathanson,* 410 N.W.2d 349, 352 (Minn.App.1987).

In *Larx* the Minnesota Supreme Court, construing Illinois law, noted that, generally, a restrictive covenant unlimited as to time but containing a territorial limit is enforceable. *Larx,* 224 Minn. at 10, 28 N.W.2d at 710. We now consider the converse issue: a restrictive covenant limited as to time but not as to territory.

The policy considerations for a *per se* rule prohibiting enforcement of restrictive covenants unlimited as to geography are strong. Such covenants impose a harsh burden on employees by prohibiting them from working in their chosen occupations anywhere in the world.

The reasonableness of a covenant is based on several factors, not on the presence or absence of any one of them. As the Supreme Court previously noted,

[t]he validity of the contract in each case must be determined on its own facts and

a reasonable balance maintained between the interests of the employer and the employee.

*Bennett*, 270 Minn. at 535–36, 134 N.W.2d at 899–900. The covenant must be scrutinized as a whole to determine whether it is reasonable. A restrictive covenant lacking a territorial limit perhaps will often be held to be unreasonable. Nonetheless, we are reluctant to enunciate a *per se* rule barring enforceability of all restrictive covenants lacking such a limit.

■ There may very well be instances in which a restrictive covenant unlimited as to territory is reasonably necessary to protect the employer's interests, for example, in employment with multinational corporations. We therefore must leave determination of the reasonableness of restrictive covenants lacking territorial limits to trial courts; they have the means to consider this issue in individual cases by hearing evidence from the parties. Accordingly, we hold that a restrictive covenant on employment, lacking a territorial limitation, is not *per se* unenforceable.

We also note that the trial court failed to consider separate enforcement of the three individual covenants: confidentiality, nonsolicitation, and nonemployment covenants. The trial court's own findings suggest that it found at least two of these to be reasonable, i.e., the confidentiality and nonsolicitation covenants.

The trial court found that Bloch possessed confidential information about Dynamic Air's business; that disclosure of such information would cause serious, irreparable harm; and that his employment with Whirl–Air involved a risk of disclosure of the confidential information. The trial court also found that the harm to Dynamic Air outweighs the harm to Bloch.

■ Common sense suggests that a territorial limitation is often an irrelevant factor for these two covenants. In *Rollins Burdick Hunter of Wis., Inc. v. Hamilton*, 101 Wis.2d 460, 304 N.W.2d 752, 755 (1981), the Wisconsin Supreme Court, construing Wisconsin law, noted that a territorial limit is irrelevant in a nonsolicitation covenant because the restriction to former clients is

sufficiently narrow. We find this reasoning persuasive.

■ Lack of a territorial limit for the confidentiality covenant also seems irrelevant in this matter. Whirl–Air and Dynamic Air are, after all, both Twin Cities firms. Moreover, it is possible that disclosure of confidential information to a competitor would be harmful to the employer regardless of where the competitor is located. We therefore conclude that the reasonableness of both the nonsolicitation and confidentiality covenants in this matter should be examined without regard to the territorial limitation.

Accordingly, we reverse and remand to the district court for reconsideration of the motion for temporary injunction. The trial court should first consider the three covenants separately. The court should determine whether the nonsolicitation and confidentiality covenants are reasonably necessary to protect the interests of the employer. The court should scrutinize the nonemployment covenant especially carefully because of the heavy burden it imposes on Bloch by prohibiting him from working in his chosen profession for two years. We also remind the district court of the discretion to "blue pencil" a covenant, that is, to modify so as to render it reasonable and enforceable. *Bess*, 257 N.W.2d at 794–95.

■ Finally, we note that the district court committed error in relying upon an unpublished opinion for the proposition that a restrictive covenant lacking a territorial limitation is per se unenforceable. Unpublished opinions of the Court of Appeals are not precedential. Minn.Stat. § 480A.08, subd. 3(c) (1992). At best, these opinions can be of persuasive value. For example, a party may cite to an unpublished opinion affirming a trial court's exercise of discretion to persuade a trial court to exercise discretion in the same manner. It is, however, improper to rely on unpublished opinions as binding precedent.

We note also that the use of such opinions has the potential to result in profound unfairness. Attorneys who have access to computerized research systems are able to

find unpublished opinions with facts apparently similar to their case. Attorneys who cannot afford these services, however, are at a disadvantage, as they are unable to find those unpublished opinions supporting their cases. Because the full fact situation is seldom set out in unpublished opinions, the danger of mis-citation is great.

The legislature has unequivocally provided that unpublished opinions are not precedential. We remind the bench and bar firmly that neither the trial courts nor practitioners are to rely on unpublished opinions as binding precedent.

**Reversed and remanded.**