**SKYLINE VILLAGE PARK ASSOCIATION,**
Appellant,

v.

**SKYLINE VILLAGE L.P.,**
et al., Respondents.

No. A10–167.

Court of Appeals of Minnesota.

July 20, 2010.

John Cann, Housing Preservation Project, and Justin Bell, All Parks Alliance for Change, St. Paul, MN, for appellant.

John F. Bonner, III, Thomas F. DeVincke, Bonner & Borhart LLP, Minneapolis, MN, for respondents.

Considered and decided by SHUMAKER, Presiding Judge; LARKIN, Judge; and COLLINS, Judge.*

## OPINION

LARKIN, Judge.

Appellant challenges the district court's declaratory judgment in favor of respondents, arguing that the district court's ruling is based on an erroneous interpretation of Minnesota Statutes, chapter 327C. Because the district court correctly determined that section 327C.02, subdivision 2, does not impose a reasonableness requirement on increases in manufactured-home-park-lot rental rates and that section 327C.05, subdivision 1, which prohibits a park owner from engaging in an unreasonable course of conduct, does not apply to increases in manufactured-home-park-lot rental rates, we affirm.

## FACTS

The facts in this case are undisputed. Respondent Skyline Village is a manufactured-home community located in Inver Grove Heights. Appellant Skyline Village Park Association is a resident association consisting of 268 of the 351 occupied households in the Skyline community. The dispute in this matter arises from a $25 per month rent increase imposed by Skyline Village beginning March 1, 2008.

Appellant initiated a lawsuit claiming, in part, that the proposed increase is unreasonable and therefore unenforceable under

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

Minn.Stat. § 327C.02 (2008). Appellant argued that the increase is unreasonable because (1) it set the rent at a level substantially higher than that of other comparable parks in the region, (2) it is part of a 23%–24% rent increase over the course of four years, and (3) requested repairs and maintenance had not been completed in the park. Appellant sought declaratory and injunctive relief.

In August 2009, the parties moved for a declaratory judgment establishing whether manufactured-home-park-lot rent increases are subject to a reasonableness requirement under Minnesota statutes, and if so, how reasonableness is to be evaluated. The district court determined that any requirement for reasonableness set forth in Minn.Stat. § 327C.02 does not apply to increases in the rental rate for a manufactured-home-park lot and in the alternative, a determination of whether a rent increase is reasonable is limited to a comparison of market-comparable rents or rent increases. The district court further declared that (1) a determination of whether a manufactured-home-park-lot rent increase is reasonable may not include consideration of the factors set out in Minn.Stat. § 327C.01, subdivision 8 (2008); (2) a determination of whether a manufactured-home-park-lot rent increase is enforceable may not include consideration of whether it is substantial pursuant to Minn.Stat. § 327C.01, subd. 11 (2008); and (3) the prohibition under Minn.Stat. § 327C.05, subd. 1, against a manufactured-home-park owner's course of conduct that is unreasonable does not apply to rent increases. The district court entered a final judgment in respondents' favor, and this appeal followed.

## ISSUES

I.  Did the district court err by concluding that Minn.Stat. § 327C.02, subd. 2, does not impose a reasonableness requirement on manufactured-home-park-lot rent increases?

II. Did the district court err by concluding that the prohibition under Minn. Stat. § 327C.05, subd. 1, against a manufactured-home-park owner's course of conduct that is unreasonable does not apply to increases in lot rent?

## ANALYSIS

### I.

In this appeal, we must determine whether Minnesota statutes impose a reasonableness requirement on manufactured-home-park-lot rent increases. Our focus is on section 327C.02, subdivision 2, which provides, in relevant part, that "[a] rule adopted or amended after the resident initially enters into a rental agreement may be enforced against that resident only if the new or amended rule is reasonable and is not a substantial modification of the original agreement." Minn.Stat. § 327C.02, subd. 2. It further states: "A reasonable rent increase made in compliance with section 327C.06 is not a substantial modification of the rental agreement and is not considered to be a rule for purposes of section 327C.01, subdivision 8." *Id.* Appellant argues that we should interpret section 327C.02, subdivision 2, as imposing a reasonableness requirement on rent increases. Appellant contends that under section 327C.02, subdivision 2, an unreasonable rent increase is a rule change that must comply with the statutory requirements governing rule changes.

"On appeal from a declaratory judgment, we ... review the [district] court's determination of questions of law de novo." *Rice Lake Contracting Corp. v. Rust Env't & Infrastructure, Inc.*, 549 N.W.2d 96, 98–99 (Minn.App.1996), *review*

*denied* (Minn. Aug. 20, 1996). "Statutory construction is ... a legal issue reviewed de novo." *Lee v. Fresenius Med. Care, Inc.*, 741 N.W.2d 117, 122 (Minn.2007). When interpreting a statute, our object is to "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2008). "[An appellate court] first look[s] to see whether the statute's language, on its face, is clear or ambiguous. A statute is ambiguous only when the language therein is subject to more than one reasonable interpretation." *Am. Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000) (quotation and citations omitted). If the legislature's intent is clearly discernible from a statute's unambiguous language, appellate courts interpret the language according to its plain meaning, without resorting to other principles of statutory construction. *State v. Anderson*, 683 N.W.2d 818, 821 (Minn.2004).

The portion of section 327C.02, subdivision 2, at issue here provides: "A reasonable rent increase made in compliance with section 327C.06 [governing rent increases] is not a substantial modification of the rental agreement and is not considered to be a rule for purposes of section 327C.01, subdivision 8 [defining a reasonable rule]." Minn.Stat. § 327C.02, subd. 2. Appellant argues that this statement suggests that an unreasonable rent increase is a substantial modification of the rental agreement and is considered to be a rule for purposes of section 327C.01, subdivision 8. Respondents counter that the word "reasonable" means nothing more than "made in compliance with section 327.06." Because both interpretations are reasonable, we conclude that the statutory language is ambiguous and that it is appropriate to apply principles of statutory construction.

"A statute should be interpreted, whenever possible, to give effect to all of its provisions; 'no word, phrase, or sentence should be deemed superfluous, void, or insignificant.'" *Am. Family Ins. Group*, 616 N.W.2d at 277 (quoting *Amaral v. St. Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn.1999)) (other citation omitted). And "[appellate courts] are to read and construe a statute as a whole and must interpret each section in light of the surrounding sections to avoid conflicting interpretations." *Id.* In ascertaining the legislature's intent, we may be guided by the following statutory presumptions: "the legislature intends the entire statute to be effective and certain," and "the legislature does not intend a result that is absurd, impossible of execution, or unreasonable." Minn.Stat. § 645.17 (2008). "Every law shall be construed, if possible, to give effect to all its provisions." Minn. Stat. § 645.16.

Appellant emphasizes the need to give effect to all of the provisions in section 327C.02, subdivision 2, and argues that we must give meaning to the word "reasonable" in the phrase "reasonable rent increase made in compliance with section 327C.06." Appellant asserts that interpreting the word "reasonable" to mean nothing more than compliance with section 327C.06 renders the word superfluous. Appellant argues that we must instead give effect to the word by interpreting section 327C.02, subdivision 2, to mean that "rent increases must be reasonable and those which are not are subject to limitations in [s]ections 327C.01[,] subdivision 8 and 327C.02."

We are mindful of our statutory obligation to construe every law, if possible, to give effect to all of its provisions. *See* Minn.Stat. § 645.16. But we must also consider whether construing the word "reasonable" as imposing a reasonableness requirement on rent increases (1) is consistent with the predominant scheme in chapter 327C that distinguishes "rules" and

"rule changes" from "rent" and "rent increases," (2) yields an absurd result, and (3) is consistent with the contemporaneous legislative history. *See* Minn.Stat. §§ 645.16 (listing factors that may be considered when determining the legislature's intent); .17 (providing that the legislature does not intend a result that is absurd); *Am. Family Ins. Group*, 616 N.W.2d at 277 (requiring that appellate courts construe statutes as a whole and interpret each section in light of the surrounding sections to avoid conflicting interpretations). We address each consideration in turn.

*Statutory Scheme*

Chapter 327C expressly and consistently differentiates between "rules" and "rule changes" and "rent" and "rent increases." A rule is defined as "any rental agreement provision, regulation, rule or policy through which a park owner controls, affects or seeks to control or affect the behavior of residents." Minn.Stat. § 327C.01, subd. 10 (2008). Unreasonable rules are prohibited. Minn.Stat. § 327C.05, subd. 1. The statute enumerates rules that are presumptively unreasonable and provides that a court may declare unreasonable any rule that fails to meet the statutory definition of a reasonable rule. Minn.Stat. § 327C.05, subds. 2, 3 (2008). The enforceability of a rule modification is governed by section 327C.02, subdivision 2, which requires that the new or amended rule be reasonable and not a substantial modification of the original agreement. Minn.Stat. § 327.02, subd. 2. Section 327.01, subdivision 8, defines "reasonable rule," and subdivision 11 defines "substantial modification."[1] Minn.Stat. § 327.01, subds. 8, 11.

"Rent" is governed by separate and distinct provisions within chapter 327C. Section 327C.03, subdivision 3, governs rent and requires, with limited exceptions, uniform rental charges throughout a manufactured-home park. Minn.Stat. § 327C.03, subd. 3 (2008). A park owner may charge a fee for delinquent rent, as part of the rent, if the fee is provided for in the rental agreement. *Id.* The inclusion of certain types of fees within rent is prohibited. *Id.* For example, a park owner may not charge a fee based on the number of people residing in the resident's home, the size of the home, or the type of personal property used or located in the home. *Id.* A park owner may charge a fee for pets owned by the resident, but the fee is capped at $4 per pet per month. *Id.*

Rent increases are governed by section 327C.06, which provides:

Subdivision 1. Notice of rent increases required. No increase in the amount of the periodic rental payment due from a resident shall be valid unless the park owner gives the resident 60 days' written notice of the increase.

Subd. 2. Prohibition. No rent increase shall be valid if its purpose is to pay, in

---

1. A reasonable rule is defined as

a park rule: (a) which is designed to promote the convenience, safety, or welfare of the residents, promote the good appearance and facilitate the efficient operation of the park, protect and preserve the park premises, or make a fair distribution of services and facilities; (b) which is reasonably related to the purpose for which it is adopted; (c) which is not retaliatory or unjustifiably discriminatory in nature; and (d) which is sufficiently explicit in prohibition, direction, or limitation of conduct to fairly inform the resident of what to do or not to do to comply.

Minn.Stat. § 327C.01, subd. 8. Substantial modification "means any change in a rule which: (a) significantly diminishes or eliminates any material obligation of the park owner; (b) significantly diminishes or eliminates any material right, privilege or freedom of action of a resident; or (c) involves a significant new expense for a resident." *Id.*, subd. 11.

whole or in part, any civil or criminal penalty imposed on the park owner by a court or a government agency.

Subd. 3. Rent increases limited. A park owner may impose only two rent increases on a resident in any 12–month period.

Minn.Stat. § 327C.06 (2008). Additionally, a park owner may not increase rent as a penalty for a resident's good-faith complaint to the park owner, government agency or official; good-faith attempt to exercise rights or remedies under law; or joining and participating in the activities of a resident association. Minn.Stat. § 327C.12 (2008).

The distinction between "rules" and "rent" is carried forth in the provisions governing rental agreements, termination of rental agreements, and defenses to evictions. Section 327C.02, subdivision 1, requires that every agreement to rent a lot be in writing and enumerates the terms and conditions that must be contained in the agreement. Minn.Stat. § 327C.02, subd. 1. The enumeration distinguishes between "the amount of rent per month" and "all rules applicable to the resident." *Id.* Section 327C.09 lists the reasons that a park owner may recover possession of land upon which a manufactured home is situated. Minn.Stat. § 327C.09 (2008). The statute lists nonpayment of rent and rule violations as separate reasons for termination and describes termination procedures that are unique to each. *Id.*, subds. 2, 4. Lastly, section 327.10, which governs defenses to eviction, distinguishes between defenses related to failure to pay rent, failure to pay rent increases, and rule violations. Minn.Stat. § 327C.10, subds. 1–3 (2008). A renter may assert, as a defense to an eviction based on an alleged rule violation, that "the rule allegedly violated is unreasonable." *Id.*, subd. 3. But the reasonableness of a rent increase is not

listed as a defense to an eviction based on nonpayment of a rent increase; instead, the listed defenses are based on the restrictions on rent increases set forth in section 327C.06. *Id.*, subd. 2.

We have implicitly recognized the statutory distinction between "rules" and "rent" when reviewing a district court's interpretation of chapter 327C. In *Sargent v. Bethel Props., Inc.*, we determined that the addition of utility charges to existing manufactured-home-park rental agreements was a new rule that substantially modified the agreements and rendered them unenforceable as a matter of law. 653 N.W.2d 800, 803 (Minn.App.2002). We rejected the park owner's argument that the addition of utility charges constituted a rent increase and not a rule modification, reasoning that the decision to impose separate utility charges was intended to control behavior—extraordinary water consumption—and not to increase revenue. *Id.* at 802. We also stated that the owner's provision of the notice required for a rent increase had no bearing on whether the addition of utility charges constituted a "rent increase *or* a rule modification." *Id.* at 803 (emphasis added). We concluded that the district court did not err by finding that the owner's decision to add utility charges constituted "a new rule and not a rent increase." *Id.*

Our analysis in *Sargent* recognizes that rule changes and rent increases are not synonymous, unlike our approach in *Schaff v. Hometown Am., L.L.C.*, No. A04–1778, 2005 WL 1545525 (Minn.App. July 5, 2005), *review denied* (Minn. Sept. 28, 2005), on which appellant relies. Of course, *Schaff* is not binding authority. Unpublished opinions are of persuasive value "[a]t best" and not precedential. *Dynamic Air, Inc. v. Bloch*, 502 N.W.2d 796, 800 (Minn.App.1993); Minn.Stat. § 480A.03, subd. 3 (2008) ("Unpublished

opinions of the court of appeals are not precedential."). And because the issue of whether a rent increase constitutes a rule change was not raised, analyzed, or decided, *Schaff* is not persuasive.

*Schaff* involved both a change to a utility-billing method and a corresponding rent increase. 2005 WL 1545525, at *2. In the facts and decision sections of our opinion in *Schaff*, we referred to the elimination of individual, metered utility billing and the corresponding implementation of a rent increase as a "rule change." 2005 WL 1545525, at *2–*4. But we also referred to the change as a "rent increase." *Id.* at *4. While we used these terms interchangeably, we never considered or determined whether the rent increase, which was imposed in conjunction with the utility-billing change, would constitute a rule change standing alone. *Id.* Thus, it cannot be said that our holding that the rent increase was "not unreasonable" as a matter of law was based on a conclusion that the rent increase constituted a rule change subject to a statutory reasonableness requirement. *Id.* at *5. While we referenced section 327C.02, subdivision 2, as one of the grounds for the underlying lawsuit, the issues on appeal were whether "the district court erred in its determination that respondent's rental increase was not retaliatory, abused its discretion in a number of evidentiary rulings, and showed bias." *Id.* at *1. We were not asked to consider or determine the reasonableness of the rent increase under section 327.02, subdivision 2.[2]

Given the statutory scheme set forth in chapter 327, we agree with respondents' assertion that "the completeness and detail with which the [l]egislature addressed rent leads one to conclude that had the [l]egislature wanted to address rent increase controls, it would have done so expressly." The legislature's failure to impose an express "reasonableness" requirement on rent increases in its enumeration of rent increase restrictions in section 327C.06 indicates that the legislature did not intend to impose a reasonableness restriction. *See Underwood Grain Co. v. Harthun*, 563 N.W.2d 278, 281 (Minn.App.1997) ("It is a principle of statutory construction that the expression of one thing means the exclusion of others ('expressio unius est exclusio alterius').").

*Absurd Result*

We next consider whether appellant's proposed construction of section 327C.02, subdivision 2, yields an absurd result. Appellant argues that when the legislature excluded reasonable rent increases from the provisions prohibiting substantial modifications of a rental agreement and requiring compliance with the reasonableness standards of section 327C.01, subdivision 8, the legislature intended that any other type of rent increase (i.e., an unreasonable rent increase) is not so excluded. Under this construction, an unreasonable rent increase constitutes a rule change subject to the reasonableness standards of section 327C.01, subdivision 8.

There are two problems with this approach. First, because chapter 327C only defines "reasonable" in the context of

---

2. Appellant's reliance on *Schaff* demonstrates why it is improper to rely on unpublished opinions of this court as anything other than persuasive authority and why care must be taken when citing unpublished opinions as persuasive authority. *See Vlahos v. R & I Const. of Bloomington, Inc.*, 676 N.W.2d 672, 676 n. 3 (Minn.2004) ("The danger of miscita-

tion is great because unpublished decisions rarely contain a full recitation of the facts."); *Dynamic Air*, 502 N.W.2d at 801 ("We remind the bench and bar firmly that neither the trial courts nor practitioners are to rely on unpublished opinions as binding precedent."). Our holding in *Schaff* is not persuasive on the issue presented in this case.

rules, it assumes that a rule is the subject of any reasonableness determination. Appellant's argument, however, reverses this process; it would use a determination that a rent increase is unreasonable to make that rent increase a rule. Chapter 327C, however, lacks a standard for determining whether a rent increase is reasonable. *See* Minn.Stat. § 327C.01, subd. 8 (defining "reasonable rule"). Thus, if adopted, appellant's argument would put the district court in the untenable position of either (a) determining whether a rent increase is reasonable without any guidance from the legislature [3] or (b) applying the definition of a reasonable rule to a rent increase to determine whether that increase is a rule, thereby assuming the conclusion that the increase is, in fact, a rule. Neither option is judicially palatable. Moreover, adoption of standards for determining whether a rent increase is reasonable, within the regulatory structure of chapter 327C, involves policy decisions balancing the considerations of that chapter. Adoption of such standards is for the legislature, not the courts. *See, e.g., Haskin v. Northeast Airways, Inc.*, 266 Minn. 210, 216, 123 N.W.2d 81, 86 (1963) (stating that public policy considerations that might justify a change in law "are for the legislature and not [an appellate] court to evaluate").

Second, under appellant's proposed construction, if a court were to determine—apparently by some unarticulated, non-rule-based method—that a rent increase is unreasonable, the rent increase would be subject to an evaluation of reasonableness under section 327C.01, subdivision 8. But if a determination of unreasonableness is necessary to transform a rent increase into a rule change, we discern no purpose in re-evaluating the reasonableness of the re-

sulting rule change a second time under section 327C.01, subdivision 8, particularly because different standards could produce conflicting results. Thus, appellant's proposed construction yields an illogical and absurd result.

*Legislative History*

Lastly, we consider the contemporaneous legislative history. "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16. The legislature's intent may be ascertained by considering several factors including the occasion and necessity for the law, the circumstances under which it was enacted, the mischief to be remedied, the object to be attained, and the contemporaneous legislative history. *Id.*

Appellant argues that the legislative purpose of chapter 327C is to protect park residents. *See Arcadia Dev. Corp. v. City of Bloomington*, 552 N.W.2d 281, 286 (Minn.App.1996) ("Minnesota has long regulated the mobile home park industry to protect park residents."), *review denied* (Minn. Oct. 29, 1996). The rationale for the special protection of manufactured-home-park residents is that residents are typically low- to moderate-income persons who have made a substantial investment in their homes that is at risk because they only rent the land on which the homes are situated. *Id.* at 284 n. 2. Once on site, the homes are costly and difficult to move, putting park owners in a superior bargaining position. *Id.*

Appellant relies on a 1982 memorandum from Senator Gene Merriam that describes the legislative history of Chapter 327. The memorandum discusses the unusual status of the manufactured-home-park

---

3. As discussed in the next section, the legislative history of chapter 327C indicates that a "major" problem with earlier versions of the legislation was the failure to define key terms such as "reasonable."

owner, noting that the park owner "has come to resemble a private government" and that "[p]ark rules control a wide spectrum of resident conduct, ranging from the length that grass may be allowed to grow, to whether a homemaker can earn some extra income by babysitting neighborhood children, to how many people can live in each private home." "In short," the memorandum concludes, "a park owner is like an unelected mayor of a bedroom community."

The memorandum notes that the legislature first recognized the special nature of manufactured-home-parks in 1973 when it created a law to govern landlord-tenant relations in those parks. In 1979, the legislature heard testimony regarding major abuses of power occurring through this form of "private government" and substantially amended the law in response. The amendments required that all park rules be reasonable; prohibited substantial modification of a preexisting lease; clarified and strengthened the right of a resident to sell his or her home within the park; and severely limited no-cause eviction. The memorandum also notes that while these amendments made major improvements, they also left "major" problems: no-cause evictions were still occurring and key terms, such as "reasonable" and "substantial modification" were left undefined.

The memorandum goes on to highlight the key features of the proposed 1982 amendments, which were meant to address these problems: vague and general language is clarified and made more specific; no-cause eviction is eliminated; for-cause eviction is made more efficient; rents will be required to be uniform within a park, varying only for lots with special advantages or in cases of residents with special needs; and in-park sale rights are clarified.

Noticeably absent from the memorandum is any mention of rent increases. The only restriction, control, or regulation concerning rent is the requirement that rents be uniform within a park. Moreover, reasonableness is only discussed in the context of park rules, and the rules described in the memorandum concern the regulation of "resident conduct," such as requiring residents to maintain a certain grass length on their lots. The memorandum does not suggest that a rent increase is synonymous with efforts to restrict this type of resident conduct.

While the imposition of a reasonableness requirement might be consistent with the legislature's general desire to protect manufactured-home-park residents and to limit a park owner's power in relation to the residents, the legislative history simply does not indicate intent to impose a reasonableness requirement on rent increases. Such a policy decision must be made through the legislative process, which provides opportunity for public input, debate, and deliberation, as well as representative decision making. We therefore will not construe chapter 327C to impose a reasonableness requirement in the absence of clear legislative intent to do so. *See Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988) ("The function of the court of appeals is limited to identifying errors and then correcting them." (citations omitted)); *Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn.App.1987) ("[T]he task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court."), *review denied* (Minn. Dec. 18, 1987).

In summary, construing the word "reasonable" in section 327C.02, subdivision 2, as imposing a reasonableness requirement on rent increases is inconsistent with the statutory scheme distinguishing "rules" from "rent," yields an absurd result, and is

unsupported by the contemporaneous legislative history. Moreover, and of great significance, interpreting chapter 327C to impose a reasonableness requirement on rent increases is a policy determination beyond this court's authority. Thus, while we are mindful of the requirement that we construe every law, if possible, to give effect to all its provisions, we conclude that the term "reasonable" before the phrase "rent increase" in section 327C.02, subdivision 2, is superfluous.

We therefore hold that a rent increase is not a rule change for purposes of chapter 327C and affirm the district court's conclusion that any requirement for "reasonableness" set forth in section 327C.02 does not apply to increases in manufactured-home-park-lot rental rates. Accordingly, the district court correctly concluded that the provisions of section 327C.01, subdivisions 8 and 11, which by their express terms apply to rules, do not apply to rent increases. Because we determine that section 327C.02, subdivision 2, does not impose a reasonableness requirement on rent increases, we do not review the district court's determination that, to the extent such a requirement exists, a determination of reasonableness is limited to a comparison of market-comparable rents or rent increases.

## II.

■ We next review the district court's declaration that the following prohibition does not apply to rent increases: "No park owner may engage in a course of conduct which is unreasonable in light of the criteria set forth in section 327C.01, subdivision 8." Minn.Stat. § 327C.05, subd. 1. Appellant argues that the "pattern of rent increases" instituted by respondent "is surely a 'course of conduct' and thus must be evaluated for reasonableness in light of the criteria set out in Section 327C.01, [s]ubd. 8."

But the plain language of section 327C.05 indicates that it applies to rules, not rent increases. Subdivision 1 prohibits unreasonable rules. Minn.Stat. § 327C.05, subd. 1 ("No park owner shall adopt or enforce unreasonable rules."). And the provision within subdivision 1 upon which appellant relies specifically references the criteria set forth in section 327C.01, subdivision 8, which also applies to rules. *Id.* Subdivision 2 enumerates rules that are presumptively unreasonable. *Id.*, subd. 2. Subdivision 3 provides that "a court may declare unreasonable any park rule if the courts finds that the rule fails to meet the standard of section 327C.01, subdivision 8." *Id.*, subd. 3. The last subdivision allows a park owner to adopt and enforce a reasonable rule that limits the maximum number of persons permitted to reside in a manufactured home. *Id.*, subd. 4 (2008).

Because the language of section 327C.05 is unambiguous, we interpret it according to its plain meaning, without resorting to other principles of statutory construction. *See Anderson*, 683 N.W.2d at 821 ("When the text of a law is plain and unambiguous, we must not engage in any further construction." (Quotation omitted)). And because the language applies to rules and a rent increase is not a rule, we hold that section 327C.05, subdivision 1, does not apply to a series of rent increases.

## DECISION

Because Minn.Stat. § 327C.02, subd. 2, does not impose a reasonableness requirement on manufactured-home-park-lot rent increases and because Minn.Stat. § 327C.05, subd. 1, does not apply to manufactured-home-park-lot rent increases, the district court did not err by entering

declaratory judgment in respondents' favor.

**Affirmed.**