*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1221**

Linda K. Yonak, et al.,
Appellants,

vs.

Hawker Well Works, Inc., et al.,
Respondents.

**Filed April 6, 2015
Affirmed in part, reversed in part, and remanded
Bjorkman, Judge**

Kandiyohi County District Court
File No. 34-CV-13-728

Matthew J. Bialick, Jack Atnip, III, Hellmuth & Johnson, PLLC, Edina, Minnesota (for appellants)

Roger C. Justin, Benjamin Bohnsack, Rinke Noonan, St. Cloud, Minnesota (for respondents)

Considered and decided by Hudson, Presiding Judge; Bjorkman, Judge; and Minge, Judge.[*]

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Appellants challenge a summary judgment enforcing a noncompete agreement, arguing that (1) the agreement, even as modified by the district court, is unenforceable,

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

(2) the agreement is preempted by federal patent law, and (3) the district court erred in declining to award attorney fees. We affirm in part, reverse in part, and remand.

## FACTS

In 2012, appellants Linda and Kevin Yonak and five other shareholders formed respondents Hawker Well Works, Inc. and Liberty Holdings, LLC. Hawker designs, markets, and sells the Hawker Pipe Handler, which is used to handle and maneuver pipe for drilling oil and gas wells. Liberty holds title to Hawker's intellectual property. Both Kevin and Linda Yonak served on Hawker's board of directors, and Linda Yonak was Hawker's CEO.

Along with the other shareholders, the Yonaks signed substantively identical agreements (the agreement) with Hawker and Liberty (together Hawker). The agreement contains three restrictive covenants: a confidentiality provision, a noncompetition provision, and a nonsolicitation provision. The confidentiality provision states:

> Owner will not, during or subsequent to the time period Owner owns an ownership interest in Hawker, use or disclose Hawker's confidential information to any person not employed by Hawker or not otherwise authorized by Hawker to receive such confidential information without Hawker's prior written consent. . . . The obligations contained in this paragraph will survive for as long as Hawker, in its sole judgment, considers the information to be confidential information.

Confidential information is defined as "all of Hawker's information that is proprietary to its business or proprietary to others and entrusted to its business, whether or not trade secrets." The confidentiality provision further notes:

2

Confidential information also includes, without limitation, Hawker's information concerning research, development, patents, copyrights, trade secrets and other intellectual property, purchasing, accounting, marketing, customer lists, active and inactive accounts, products, procedures, forms, payroll information, documents and services. All information that Owner has a reasonable basis to consider confidential is confidential information, whether or not originated by the Owner and without regard to the manner in which the Owner obtains access to this or any other proprietary information.

The noncompetition covenant provides:

Owner will not directly, or indirectly, alone or as an investor, partner, officer, director, owner, shareholder, or employee of any other firm or entity, engage in any activity, business or employment, in competition with any part of Hawker's business as conducted during Owner's ownership of an interest in Hawker or with any part of Hawker's contemplated business with respect to which Owner has confidential information.

The nonsolicitation provision states that an owner "will not, directly or indirectly, recruit, solicit, or otherwise induce any of Hawker's employees, suppliers, lenders or customers to discontinue or reduce the extent of such relationship with Hawker."

All three restrictive covenants are global in scope. While the confidentiality provision has no temporal limit, the noncompetition and nonsolicitation provisions are effective for five years following the termination of an owner's interest in Hawker.

After 11 months of operation, Hawker bought out the Yonaks' shares; the Yonaks are no longer affiliated with either company. Following their departure, the Yonaks initiated this action seeking a declaration that the agreement is unenforceable because it is

3

vague and overbroad. The Yonaks also argued that any contractual prohibition against the manufacture of competing pipe handlers is preempted by federal patent law.

The district court determined on cross-motions for summary judgment that the agreement is enforceable, subject to two modifications. First, the district court "clarified" that the noncompetition provision only applies "to pipe handling equipment similar to, and that would compete with, the Hawker Pipe Handler." Second, the district court modified the agreement so the nonsolicitation provision applies "to the employees, lenders, suppliers and customers of the Defendants that existed on or before March 25, 2013." The district court declined to address the Yonaks' argument that federal patent law preempted enforcement of the agreement, and denied their request for attorney fees. The Yonaks appeal.

## D E C I S I O N

Restrictive covenants are "carefully scrutinized by courts" due to the restraints they place on an individual's ability to make a living. *Klick v. Crosstown State Bank*, 372 N.W.2d 85, 87 (Minn. App. 1985). This approach stems from a desire to protect "the average individual employee who as a result of his unequal bargaining power may be found in oppressive circumstances." *Bennett v. Storz Broadcasting Co.*, 270 Minn. 525, 535, 134 N.W.2d 892, 899 (1965). Courts have also expressed concern that restrictive covenants might be improperly used to discourage employees from terminating their employment. *See Eutectic Welding Alloys Corp. v. West*, 281 Minn. 13, 20, 160 N.W.2d 566, 571 (1968). But a restrictive covenant is enforced if "it is necessary to protect

4

reasonable interests of an employer, and does not impose unreasonable restraints on the rights of the employee." *Klick*, 372 N.W.2d at 87.

When examining the reasonableness of a restrictive covenant, a district court should consider "the nature and character of the employment, the nature and extent of the business, the time for which the restriction is imposed, the territorial extent of the covenant, and other pertinent conditions." *Dynamic Air, Inc. v. Bloch*, 502 N.W.2d 796, 799 (Minn. App. 1993). We review a district court's findings regarding the reasonableness of a restrictive covenant for clear error. *Klick*, 372 N.W.2d at 88.

Under the blue-pencil doctrine, a district court that finds a noncompetition provision unreasonable as written may modify the provision "to render it reasonable and enforceable." *Dynamic Air*, 502 N.W.2d at 800; *see also Klick*, 372 N.W.2d at 88. But the district court is not required to do so. *Klick*, 372 N.W.2d at 88. We review both the decision to blue-pencil a restrictive covenant and the nature and extent of those modifications for an abuse of discretion. *Id.*

The Yonaks challenge the validity of the noncompetition and confidentiality provisions. They also renew their preemption argument and dispute the district court's denial of attorney fees. We address each argument in turn.

I. **The district court did not abuse its discretion by enforcing the noncompetition provision, subject to its blue-pencil modification.**

The district court found that the noncompetition provision is enforceable, but limited its functional scope to the oil and gas pipe-handling industry. As an initial matter, the Yonaks contend that we are permitted to review the enforceability of the

5

noncompetition provision de novo because this is an appeal from summary judgment based on undisputed facts. We disagree. The underlying facts may be undisputed, but the district court was still required to weigh those facts to determine whether the noncompetition provision is reasonable. This reasonableness determination is in essence a factual finding. *Id.*

We also reject the Yonaks' argument that this court may blue-pencil a restrictive covenant. The Yonaks cite no authority permitting an appellate court to do so. Instead, our caselaw instructs that only the district court has the discretion to modify a restrictive covenant. *See Dynamic Air*, 502 N.W.2d at 800 (reminding the district court on remand that it has "the discretion to 'blue pencil' a covenant"); *Bess v. Bothman*, 257 N.W.2d 791, 795 (Minn. 1977) (holding the "enforcement of restrictive covenants remains a matter of equitable discretion" and the district court has the "authority to modify and enforce [a] covenant not to compete"). This approach is consistent with our jurisprudence precluding appellate courts from engaging in fact-finding. *Kucera v. Kucera*, 275 Minn. 252, 254, 146 N.W.2d 181, 183 (1966) ("It is not within the province of [appellate courts] to determine issues of fact on appeal.").

Turning to the merits of the Yonaks' challenge, we begin with their contention that the noncompetition provision is overbroad and unenforceable due to its lack of geographic scope and five-year duration. We are not persuaded.

**Geographic scope**

The district court determined that the noncompetition provision's global reach is reasonable because the "oil industry is worldwide" and Hawker had made "successful

6

marketing attempts worldwide." The record supports these findings. While Hawker may not be multi-national in the traditional sense, it has done business throughout the United States, and has taken concrete steps to establish a foothold across North America and overseas. Most notably, Hawker has sold products in eight states, and it is currently engaged in negotiations to do business in Mexico. The record also indicates that Hawker has had contact with "a northern European client with operations in central Europe, Dubai and Saudi Arabia." Limiting the geographic scope to Minnesota, as the Yonaks suggest, would substantially undermine the noncompetition provision's effectiveness. Simply put, Hawker's existing and potential customers are engaged in the oil and gas industry, which is located outside Minnesota. On this record, the district court's determination that the global scope is reasonable is not clearly erroneous.

**Duration**

With respect to the noncompetition provision's duration, the district court found that five years is reasonable because Hawker is a start-up business and is especially vulnerable to competition from former company insiders. The Yonaks point to caselaw limiting noncompetition agreements to a much shorter duration and assert that five years is too long, especially since they were only affiliated with Hawker for 11 months. We are not persuaded.

Minnesota courts have enforced noncompetition provisions of various lengths. *See Bess*, 257 N.W.2d at 795 (five years); *Alside, Inc. v. Larson*, 300 Minn. 285, 296, 220 N.W.2d 274, 280 (1974) (two years); *Dean Van Horn Consulting Assocs. v. Wold*, 395 N.W.2d 405, 409 (Minn. App. 1986) (affirming district court's modification to one-year

7

duration). In determining the reasonableness of a temporal restriction, courts conduct a fact-specific inquiry seeking to strike a balance between the employer's need to protect its business interests and the employee's need to earn a livelihood. *See Bennett v. Storz Broad. Co.*, 270 Minn. 525, 535-36, 134 N.W.2d 892, 899-900 (1965). Courts look closely at the nature of the employee's former position, including whether the employee received specialized training, had a "unique and intimate relationship" with customers, or had access to confidential information. *See Alside, Inc.*, 300 Minn. at 296, 220 N.W.2d at 280. And courts may consider the amount of time necessary to train an employee's replacement and the extent to which customers might associate an employee with a particular employer. *See Dean Van Horn Consulting Assocs.*, 395 N.W.2d at 408-09.

The undisputed record supports the district court's findings that Hawker's start-up status supports a longer noncompetition period. Hawker was incorporated in January 2012. At the time of the summary-judgment hearing, Hawker was just beginning to break into its market, having sold a total of 11 pipe handlers. It had initiated but not yet concluded negotiations with a number of potential clients both within and outside the United States. In the absence of an established client base, Hawker is particularly vulnerable to competition.

The Yonaks' status with Hawker further supports the district court's determination that the five-year term is reasonable. As founding shareholders and officers, the Yonaks were intimately involved in designing the Hawker Pipe Handler and bringing it to market, and the "competitive advantage of having such knowledge dissipates slowly." *See Roth v. Gamble-Skogmo, Inc.*, 532 F. Supp. 1029, 1031-32 (D. Minn. 1982) (enforcing five-

year restrictive covenant because former CEO possessed extensive knowledge about the internal workings of the business). It is reasonable to assume that the Yonaks' exposure to company plans and product information exceeded the scope of what an average employee would learn about their employer's business while carrying out his or her day-to-day duties. *Cf. Klick*, 372 N.W.2d at 88 (finding covenant's three-year duration unreasonable where employee possessed "no substantial insight into the [employer's] operation"). Such extensive knowledge could easily be used to compete against the fledgling company with devastating effect. The five-year noncompetition provision ensures that Hawker has ample time to reap the benefit of the initial investment in research and development before the Yonaks can use their insider knowledge to compete against the company.

We also observe that concerns about "unequal bargaining power or oppressive circumstances," *B & Y Metal Painting, Inc. v. Ball*, 279 N.W.2d 813, 815 (Minn. 1979), are different in the context of former business owners and officers. As founding shareholders, the Yonaks were not traditional employees in danger of being coerced into accepting unfavorable terms in order to secure a livelihood. Rather, they negotiated the restrictive covenants contained in the agreement with their equal business partners. And as consideration for signing the agreement, the Yonaks received more than just employment, they became shareholders. *See id.* (acknowledging that "[m]any of the grounds for imposing a stricter test of reasonableness in the context of an employment relationship" are not present in a case involving both an employment contract and sale of

9

business).  On this record, the district court did not clearly err by finding that the five-year scope of the noncompetition provision is reasonable.

**Blue-pencil modifications**

Finally, the Yonaks argue that the district court's decision not to modify the geographic scope and duration of the noncompetition provision is an abuse of discretion. The district court's blue-pencil modifications were confined to restricting the agreement's functional scope to the oil and gas drilling industry, which the parties effectively agreed to at the summary-judgment hearing.  A district court is not required to blue-pencil a restrictive covenant.  *Klick*, 372 N.W.2d at 88.  But if it does so, it may modify a restrictive covenant to the extent necessary to render it reasonable and enforceable.  *Id.* Having determined that the district court did not clearly err in finding that the provision's geographic scope and duration were reasonable, there is no basis in the record to conclude that the district court should have made further modifications.  Accordingly, we conclude that the district court did not abuse its discretion by declining to blue-pencil the noncompetition provision more extensively than it did.

**II.**     **The district court abused its discretion by failing to independently analyze the reasonableness of the confidentiality provision.**

While the Yonaks do not dispute that Hawker has a legitimate interest in restricting the disclosure of confidential information, they contend that the confidentiality provision only applies to the "actual use of tangible, confidential materials against the Companies."  The district court did not independently analyze the reasonableness of the confidentiality provision.  This constitutes abuse of discretion because a district court is

10

required to examine the reasonableness of each restrictive covenant separately. *See Dynamic Air*, 502 N.W.2d at 800 (concluding that district court failed to consider noncompete, confidentiality, and nonsolicitiation restrictions individually and remanding for separate analysis).

The Yonaks argue that the confidentiality provision is unreasonable because its definition of confidential information is almost limitless. This argument may have merit as the definition encompasses almost any type of information that the Yonaks conceivably could have been exposed to during the course of their affiliation with Hawker. While we decline the Yonaks' invitation to modify the provision, we reverse and remand for the district court to independently examine the reasonableness of the confidentiality provision.

## III. Federal patent law does not preempt enforcement of the agreement.

Although Hawker has not obtained a patent for the Hawker Pipe Handler, the Yonaks contend that any contractual prohibition against producing competitive products is preempted by federal patent law. We are not persuaded. First, the Yonaks' argument is entirely based on our unpublished decision in *C.G.H., Inc. v. Nash Finch, Inc.*, No. A11-1598, 2012 WL 1070116 (Minn. App. Apr. 2, 2012). As an unpublished case, *Nash Finch* has no precedential weight. Minn. Stat. § 480A.08, subd. 3 (2014) (stating that "[u]npublished opinions of the Court of Appeals are not precedential"); *Dynamic Air*, 502 N.W.2d at 800 (holding that unpublished opinions are of persuasive value "[a]t best" and not precedential).

11

Second, the facts of *Nash Finch* are distinguishable from this case. In *Nash Finch*, we concluded that a breach-of-contract claim arising under a provision that barred the defendant from distributing or duplicating a proprietary product was preempted by federal patent law. 2012 WL 1070116, at *2-3. We determined that such a claim required the comparison of products to an existing patent, which would be the equivalent of allowing a federal patent infringement claim under state law. *Id.* at *3. Unlike in *Nash Finch*, Hawker does not hold a patent, and any product that could theoretically infringe on a future patent has yet to be produced. As such, the Yonaks' preemption argument is entirely speculative, and does not provide a basis to invalidate the agreement.

**IV.     The district court did not abuse its discretion by declining to award attorney fees.**

The agreement expressly provides that a prevailing party is entitled to recover attorney fees incurred in any action related to the agreement. A district court has the discretion to determine which party, if any, qualifies as a prevailing party. *Benigni v. Cnty. of St. Louis*, 585 N.W.2d 51, 54-55 (Minn. 1998). "In determining who qualifies as the prevailing party in an action, the general result should be considered, and inquiry made as to who has, in the view of the law, succeeded in the action." *Borchert v. Maloney*, 581 N.W.2d 838, 840 (Minn. 1998) (quotation omitted). We will not reverse the district court's decision regarding attorney fees absent an abuse of discretion. *Carlson v. SALA Architects, Inc.*, 732 N.W.2d 324, 331 (Minn. App. 2007), *review denied* (Minn. Aug. 21, 2007).

The district court denied the Yonaks' request for fees, concluding that both parties prevailed in this case. Specifically, the Yonaks obtained clarification limiting the noncompetition provision's functional scope, and Hawker convinced the district court to otherwise enforce the agreement. On this record, we discern no abuse of discretion.

**Affirmed in part, reversed in part, and remanded.**